**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| JAMAINE HILL, | CASE NO. 3:21-CV-00690 |
| Petitioner, | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN KENNETH BLACK, | **REPORT AND RECOMMENDATION** |
| Respondent. |  |

Petitioner Jamaine Hill ("Petitioner" or "Mr. Hill") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his sentence and convictions for having weapons under disability, and seven counts of felonious assault on a police officer with firearm specifications in Lucas County Common Pleas Court Case No. CR-17-3045.  (ECF Doc. 1 ("Petition").)  Mr. Hill's Petition, which he filed *pro se*, is deemed filed on March 21, 2021, the date he placed it in the prison mailing system.[1]  (ECF Doc. 1 p. 15.)  Mr. Hill subsequently retained counsel, with a notice of appearance filed on his behalf on November 9, 2021.  (ECF Doc. 7.)  Respondent filed an Answer/Return of Writ (ECF Doc. 9) and Supplemental Return of Writ (ECF Doc. 11).  Petitioner filed his Traverse through counsel.  (ECF Doc. 12.)  In his Traverse, he included a request for an evidentiary hearing.  (*Id.* at p. 38.)

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Mr. Hill's Petition was docketed in this Court on March 26, 2021.  (ECF Doc. 1.)

The matter was reassigned to the undersigned Magistrate Judge on October 1, 2021.  For the reasons set forth in detail herein, the undersigned recommends that the Court **DISMISS** Ground One with prejudice on the basis of procedural default and **DISMISS** Ground Two as non-cognizable and procedurally defaulted.  The request for an evidentiary hearing is **DENIED**.

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Sixth District Ohio Court of Appeals summarized the facts underlying Mr. Hill's conviction and sentence as follows:

> [*P4] On November 16, 2017, officers from the Toledo Police Department SWAT team were executing a no-knock search warrant at appellant's residence on Caroline Street in Toledo, Ohio. Detective J.P., the victim in Count 2 of the indictment, obtained the warrant and coordinated with the SWAT team on its execution. At approximately 2:00 a.m., the SWAT team and supporting officers, including J.P., arrived at appellant's residence. Officer R.K., the victim in Count 1 of the indictment and a member of the SWAT team, was the first to approach the door of the residence. He was followed immediately by officers R.J. and P.F., victims in Counts 3 and 4 of the indictment, respectively.

> [*P5] When the team reached appellant's doorway, they encountered a metal security door. R.K. opened the security door and let it hang to the right side of the doorway. Officer B.K., who remained on the front lawn, then fired a distractionary device through the front window of the residence. The device consisted of small wooden dowels, known as "knee knockers," which bounce through the room into which they are fired with the purpose of distracting any individuals present. Immediately after the knee knockers were deployed, R.J. shouted "police, search warrant." Nearly simultaneously, P.F. swung a battering ram into the residence's front door forcing it open. R.K., serving as the "point man" and carrying a shotgun, immediately proceeded through the now-open doorway.

> [*P6] Upon entering the doorway, R.K. looked to his left to see appellant holding a pistol aimed at him. Appellant began firing and R.K. immediately retreated

through the doorway and yelled "shots fired." R.K., R.J. and P.F. remained on appellant's porch until appellant stopped shooting. At that point, they, along with the remaining SWAT team members entered the residence and found appellant lying on a couch. The firearm appellant used was not immediately observable. The SWAT team completed a search of the house and located appellant's wife in the kitchen. They secured appellant and began searching the area in his immediate vicinity. In doing so, R.J. moved a sheet from the couch and discovered a pistol. Appellant was then arrested.

[*P7] While the SWAT team was executing the warrant, J.P. was tasked with watching the exterior of the residence to assist in apprehending any individuals running away. As the doorway was breached, J.P. began walking closer to the residence. As he moved, he was struck in the face by one of the bullets appellant fired. J.P. received medical treatment at the scene and was transported by ambulance to the hospital. J.P. suffered significant injuries and ultimately underwent surgery to replace a portion of his jawbone with titanium. At the time of trial, J.P. was scheduled to undergo a second surgery to replace the titanium with bone cultivated from his leg. No other officers suffered physical injuries during the incident.

[*P8] Appellant testified at trial. He stated that at approximately 1:30 A.M. on the morning of the incident, he fell asleep on his couch while watching television. At that time, he was tired and disoriented as a side effect of prescribed painkillers he was taking following a recent surgery. He next recalled awakening to the sound of glass breaking and feeling glass falling on him. He stated he was confused due to the effects of the painkillers and took a moment to process what was happening. Also, he was already nervous about someone breaking into his residence due to a window at the rear of the house having been broken earlier in the evening. After he awoke, he heard a second window break and reached for a gun sitting nearby. He then heard a commotion on the porch and saw his door knob turning suggesting someone was trying to gain entry to the residence. He immediately fired his gun toward the door. He testified that prior to firing the weapon that the door did not open and no officers had entered the residence. He stated his reasoning for firing the gun was that he feared for his and his wife's safety. Finally, appellant testified that after he finished firing his weapon, he saw the SWAT officers entering the doorway and, realizing they were police officers, laid back down and held his hands up. As the officers approached him, appellant offered an apology and stated he did not realize he was shooting at police officers.

*State v. Hill*, 2020-Ohio-1237, ¶¶ 4-8, 2020 Ohio App. LEXIS 1161, at * 2-6 (Ohio App. Ct. 2020); (ECF Doc. 9-1, pp. 145-47.)

## II.     Procedural Background

### A.     State Court Conviction

On November 27, 2017, a Lucas County grand jury charged Mr. Hill with: seven counts

of felonious assault of a peace officer in violation of Ohio Revised Code Section 2903.11(A)(2)

and (D), felonies of the first degree, with firearm specifications in violation of Ohio Revised

Code Section 2941.145(A), (B), (C), and (F) (Counts 1-7); and one count of having weapons

while under disability in violation of Ohio Revised Code Section 2923.13(A)(3) and (B), a

felony of the third degree (Count 8).  (ECF Doc. 9-1, pp. 6-12.)  Mr. Hill was appointed counsel

and pled not guilty at his arraignment on December 14, 2017.  (*Id*. at p. 14.)

Included among the pre-trial motions filed by the parties (ECF Doc. 9-1, pp. 320-30) was

Mr. Hill's March 12, 2018 motion to suppress statements he made to the police (*id.* at 16-20),

which the State opposed (*id.* at pp. 22-30, 32-33).  The trial court held a hearing on the motion to

suppress and denied the motion on March 27, 2018.  (*Id*. at pp. 35, 37-40.)

Also in March 2018, the State filed a notice of intent to use evidence of Mr. Hill's other

crimes, wrongs, or acts.  (*Id*. at pp. 42-48.)  The State argued that "[t]estimonial evidence that

immediately prior to the execution of the search warrant, the S.W.A.T. and Vice officers were

briefed and provided information" that Mr. Hill "was in possession of a handgun at the residence

[was] admissible because it explain[ed] the sequence of events, the investigative actions of police

and the particular manner in which S.W.A.T. made entry into the residence." (*Id*. at p. 45.)  More

particularly, the State argued the testimonial evidence explained "why the officers wore body

armor, deployed a 'knee knocker' through the front window of the residence as a distractionary

measure, and breached the front door without knocking" and the jury was "entitled to understand

why police executed the search warrant in the manner they did."  (*Id*.)  The State asserted that the

evidence was not being offered for the truth of the matter asserted, i.e., that Mr. Hill had a gun at his residence, but to explain the officers' investigative actions.  (*Id*. at p. 47.)  The State explained that a small fold of heroin that was collected, photographed, and inventoried was not located later when lab personnel went to obtain the drugs for analysis, and counterfeit money that was collected as part of the search was not inventoried.  (*Id*. at p. 52.)

The State filed a motion *in limine* to exclude evidence on April 26, 2018, requesting that the trial court exclude at trial any drug contraband collected by the police at the residence pursuant to the original search warrant for heroin and preclude cross-examination of the State's witnesses regarding the drug contraband.  (*Id*. at pp. 50-58.)  The State argued: Mr. Hill was not charged with drug related charges or forgery; the evidence was not relevant to whether Mr. Hill committed felonious assault or possessed a weapon under disability; and cross-examination of the State's witnesses regarding irrelevant drug contraband was not clearly probative of untruthful character.  (*Id*. at pp. 52-57.)

On June 8, 2018, Mr. Hill filed a motion for a proposed jury instruction relating to whether he acted under a mistake of fact regarding felonious assault of a peace officer.  (ECF Doc. 9-1, pp. 60-62.)  The State objected to the proposed jury instruction, arguing that Mr. Hill's knowledge that the victim was a peace officer was not an essential element of felonious assault and he would still be guilty of felonious assault under the facts as he believed them to be, even if mistaken.  (*Id*. at pp. 64-67.)

The trial court entered an order on various pre-trial motions on June 11, 2018.  (ECF Doc. 9-1, pp. 69-70; *see also* ECF Doc. 9-5, pp. 7-13, 14-17.)  As it related to the State's intent to use evidence of prior crimes, wrongs, or acts, the trial court stated that it was "not going to admit anything as it relate[d] to the basis of the search warrant or what was found as a result of

5

the search warrant," (ECF Doc. 9-5, pp. 10-11) because the only relevant item was "that there

was a properly executed search warrant and they were there for that purpose" (*id.* at p. 13).

Therefore, the trial court stated it would likely preclude evidence to show that the officers had

knowledge that the defendant had possession of a firearm and that was why the search warrant

was executed in the manner it was.  (*Id.*)  As it related to the State's motion *in limine*, the trial

court found that the "nature of the search warrant or any evidence obtained pursuant to the search

warrant [was] not relevant as it relate[d] to [the] case[]" and ruled that the "only evidence that

[would be] allowed during the course of the trial [would] be the fact [] there was a search warrant

being executed at that location."  (ECF Doc. 9-1, pp. 69-70; *see also* ECF Doc. 9-5, pp. 8-9.)

The trial court ruled that there would be no mistake of fact jury instruction provided.  (ECF Doc.

9-1, p. 69; *see also* ECF Doc. 9-5, p. 8.)  In its rulings on the pre-trial motions, the trial court also

found the parties had agreed to stipulate to use of Mr. Hill's prior drug offense conviction.  (ECF

Doc. 9-5, pp. 10-11; ECF Doc. 9-1, p. 70.)

The case proceeded to jury trial on June 11, 2018.  (ECF Doc. 9-1, p. 70; ECF Doc. 9-5,

p. 1.)  At the close of the State's case in chief on June 13, 2018, Mr. Hill orally moved for a Rule

29 acquittal on Counts 3, 4, and 7. (ECF Doc. 9-1, p. 72.)  The trial court denied the motion.

(*Id.*)  Mr. Hill proceeded with his case and testified in his defense.  (*Id.*)  After the defense rested,

the trial resumed on June 14, 2018, with closing arguments heard and jury deliberations.  (*Id.*)

The jury found Mr. Hill guilty on all counts, including the firearm specifications, on June 14,

2018.  (*Id.* at p. 74.)  The parties waived their rights to a presentence investigation and report and

the case proceeded to sentencing.  (*Id.*)  The trial court sentenced Mr. Hill to an aggregate prison

sentence of 47 years.  (*Id.* at pp. 74-76.)  The sentence included the trial court's order that Counts

3 and 4 and Counts 6 and 7, respectively, be served concurrent to one another but consecutive to

the remaining counts, which were each ordered to be served consecutive to one another. (*Id*. at pp. 74-75.) The sentencing entry was filed on June 15, 2018. (*Id*. at p. 74.)

**B.      Direct Appeal**

On July 17, 2018, Mr. Hill filed a notice of appeal with the Sixth District Court of Appeals through appellate counsel. (ECF Doc. 9-1, pp. 78-81.) In his March 11, 2019 brief (*id.* at pp. 83-115), he raised the following assignments of error:

1.      The trial court erred in denying appellant's Criminal Rule 29 motion.

2.      The jury's verdict was against the manifest weight of the evidence presented at trial.

3.      The trial court committed error to the prejudice of appellant by imposing the costs of prosecution without consideration of appellant's present or future ability to pay.

(*id*. at pp. 84, 87, 100-09). The state filed its response on June 7, 2019. (*Id.* at pp. 117-41.) On March 31, 2020, the Sixth District Court of Appeals affirmed in part and reversed in part the judgment of the trial court. *See Hill*, 2020 Ohio App. LEXIS 1161; (ECF Doc. 9-1, pp. 143-59.) The court found Mr. Hill's first and second assignments of error were not well-taken, and that his third assignment of error was well-taken as to the trial court's imposition of appointed counsel fees and confinement costs. *Hill*, 2020 Ohio App. LEXIS 1161, at * 19; (ECF Doc. 9-1, p. 158.) Mr. Hill did not file an appeal of this decision with the Supreme Court of Ohio.

**C.      Petition for Post-Conviction Relief**

While his direct appeal was pending, Mr. Hill filed a *pro se* petition for post-conviction relief on August 30, 2019, asserting he was denied his constitutional right to effective assistance of counsel at trial. (ECF Doc. 9-1, pp. 161-74.) He presented the following two assignments of error, which he argued could not have been raised on direct appeal:

1.      Trial counsel rendered ineffective when not objecting to the court sentencing petitioner to consecutive sentences that are otherwise allied

offenses of similar import, violating the petitioner's Sixth Amendment right to the United States Constitution, as well as Article I § 10 to the Ohio Constitution.

2.      Trial counsel rendered ineffective under the Sixth Amendment to the United States Constitution as well as Article I § 10 of the Ohio Constitution when not objecting to the validity of the "no knock search warrant" because the warrant was not in accordance with R.C. § 2933.231, rendering the said warrant insufficient.

(*Id.* at pp. 163-72.)  Mr. Hill attached a supporting affidavit (*id.* at pp. 176-77) and the search warrant to his petition (*id*. at pp. 178-81).  On October 4, 2019, the trial court denied Mr. Hill's petition.  (*Id*. at pp. 183-96.)  The trial court concluded Mr. Hill's claims were procedurally barred by *res judicata* because they were not based on evidence that was outside the record or unavailable to him at the time of trial.  (*Id*. at pp. 186-88.)  Alternately, the trial court concluded that the substantive issues Mr. Hill sought to raise lacked merit.  (*Id*. at pp. 188-95.)

On October 29, 2019, Mr. Hill filed a *pro se* notice of appeal with the Sixth District Court of Appeals.  (ECF Doc. 9-1, pp. 198-212.)  Mr. Hill was represented by counsel when he filed his appellate brief on January 30, 2020.  (*Id*. at pp. 214-34.)  He raised the following assignments of error in that brief:

1.      Appellant's due process rights under the Fifth and Fourteenth Amendments were violated when the trial court denied his petition for post-conviction without a hearing.

2.      The trial court[] failed to make any findings of fact or conclusion of law when it denied appellant's petition for post-conviction relief.

(*Id*. at pp. 218-20.)  The state filed its brief on February 28, 2020.  (*Id.* at pp. 236-63.)

On July 24, 2020, the Sixth District Court of Appeals affirmed the judgment of the trial court.  *State v. Hill*, 2020-Ohio-3824, 2020 Ohio App. LEXIS 2738 (Ohio App. Ct. 2020); (ECF Doc. 9-1, pp. 265-73.)  Mr. Hill did not file an appeal with the Supreme Court of Ohio.

8

**D.      Delayed Application for Reopening Appeal**

On August 7, 2020, Mr. Hill filed a *pro se* motion for leave to file a delayed App. R.

26(B) application with the Sixth District Court of Appeals.  (ECF Doc. 9-1, pp. 275-93.)  He

argued that his application should be accepted under COVID-19 tolling provisions.  (*Id*. at p.

276.)  He also argued the court should find good cause to excuse the untimely filing because the

COVID-19 pandemic impacted his ability to timely file an application and/or because his

appellate counsel was ineffective for failing to raise arguments on appeal.  (*Id*. at pp. 277-78.)

He asserted that his appellate counsel was ineffective for failing to raise the following claims in

his direct appeal:

> 1.      Appellant was denied the effective assistance of trial counsel pursuant to the Sixth and Fourteenth Amendment to the U.S. Constitution where counsel failed to object or challenge the validity of the no knock search warrant relating to evidence of serious risk of physical harm to law enforcement officers.
>
> 2.      Appellant was denied the effective assistance of trial counsel pursuant to the Sixth and Fourteenth Amendment to the U.S. Constitution where counsel failed to file motion to disclose the confidential informant.  Had counsel filed this motion, appellant could have challenged the credibility of that individual and the information that individual provided to the police.
>
> 3.      Appellant was denied the effective assistance of trial counsel where trial counsel failed to request Franks hearing in order to challenge the credibility of the confidential informants, and the detective where said information in the search warrant affidavit was false.
>
> 4.      Appellant was denied the effective assistance of trial counsel where counsel failed to investigate the existence of probable cause to support the issuance of the warrant.
>
> 5.      Appellant was denied the effective assistance of trial counsel where counsel failed to object to the court sentencing him to consecutive sentences that are otherwise allied offenses of similar import.

(*Id*. at pp. 280-84.)  On September 8, 2020, the State filed an opposition to Mr. Hill's application

to reopen.  (*Id*. at pp. 295-304.)  On November 20, 2020, the Sixth District Court of Appeals

found Mr. Hill's rule 26(B) application timely, and accordingly denied the motion for leave to file a delayed application as moot. (*Id*. at p. 306.) The court further found that that the rule 26(B) application was without merit and denied his application to reopen. (*Id*. at pp. 306-16.) Mr. Hill did not timely file an appeal with the Supreme Court of Ohio.

**E.    Federal Habeas Corpus Petition**

Mr. Hill raises two grounds for relief in his Petition:

**Ground One:** [M]y constitutional right to the effective assistance of counsel and due process by my counsel's failure to investigate the validity of the affidavit.

**Supporting Facts:** I informed my attorney that the controlled buys alleged by the police never occurred and that the affidavit to get the warrant was fraudulent based upon no controlled buys ever happening. The falsification of facts to obtain a warrant clearly violated my rights to due process of law in that my counsel's failure to investigate the validity of the warrant prevented me from asserting a defense based upon the police being at my home illegally. A Frank's Hearing was necessary for my defense.

**Ground Two:** I was illegally sentenced for five firearm specifications after it was established that I did not know how many officers were at my door.

**Supporting Facts:** When my door and window were breached, I fired my weapon under the belief that someone was trying to invade my home. I did not know that it was the police executing an illegal search warrant. Once I realized it was the police, I immediately put my gun down, raised my hands, and apologized to them for shooting. I did not know it was the police. I truly believed my home was being invaded. No evidence was produced that I knew it was the police entering my home. After I fired my weapon and was arrested, the police obtained a second search warrant to search my home which demonstrates that the first search warrant was illegal.

(ECF Doc. 1, pp. 5, 7.) Respondent filed his Return of Writ on January 6, 2022, arguing that Ground One should be dismissed based on procedural default (ECF Doc. 9, pp. 15-20) and Ground Two should be dismissed as not cognizable on federal habeas review and/or based on procedural default (*id.* at pp. 20-25) Given that the undersigned generally requires a Respondent who asserts procedural default to also brief the merits of the Petition, the undersigned ordered

Respondent to file a supplemental brief addressing, in the alternative, the merits of the two grounds for relief.  (ECF Doc. 10.)  On January 10, 2022, Respondent filed his Supplemental Return of Writ to address the merits of Mr. Hill's grounds for relief.  (ECF Doc. 11.)

Mr. Hill filed his Traverse through counsel on February 22, 2022.  (ECF Doc. 12.)  He argues therein that the Respondent suggests he did not timely file his Petition within the statute of limitations as set forth in 28 U.S.C. § 2244(d) and that the Court should find his Petition timely filed under the applicable statute of limitations based on equitable tolling or excuse his late filing under an actual innocence exception.  (ECF Doc. 12, pp. 23-26.)

Before proceeding, the undersigned makes two initial observations regarding arguments offered by Mr. Hill in his Traverse.  First, as to Mr. Hill's assertion that Respondent suggested his Petition is barred by the statute of limitations (ECF Doc. 12, p. 23), Respondent has not made that argument.  (ECF Docs. 9, 10.)  Thus, the undersigned will not address Mr. Hill's arguments relating to the statute of limitations.  Second, Mr. Hill's contention that Respondent "failed to brief the merits of each alleged procedural default" and the Supplemental Return of Writ "ignored any alleged procedural defaults and attempt[ed] to add substantive arguments on the merits of the Petition itself" (ECF Doc. 12, pp. 22-23) are unsupported.  Respondent argued procedural default in his Return of Writ (ECF Doc. 9) and, as ordered by the Court, addressed the merits of the grounds for relief in his Supplemental Return of Writ (ECF Docs. 10, 11).

### III.    Law & Analysis

**A.    Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As

amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).  Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

## B.    Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  To satisfy the

fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, procedural default applies where state court remedies are no longer available. *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim,

and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show

that there will be a fundamental miscarriage of justice if the claims are not considered. *See*

*Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of

one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006)

(quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.      Ground One

In Ground One, Mr. Hill argues that he received ineffective assistance of trial counsel

when his counsel failed to investigate the validity of the search warrant, and asserts that his

"counsel's failure to investigate the validity of the warrant prevented [him] from asserting a

defense based upon the police being at [his] home illegally."  (ECF Doc. 1, p 5.)  Respondent

argues this ineffective assistance of trial counsel claim is procedurally defaulted because Mr. Hill

failed to raise the claim in his direct appeal and also failed to appeal the state court of appeal's

decision affirming the denial of his post-conviction petition to the Ohio Supreme Court.  (ECF

Doc. 9, pp. 15-16.)  Respondent further argues that Mr. Hill has not shown that cause and

prejudice or a miscarriage of justice warrant excusing the default.  (*Id*. at pp. 16-20.)

Mr. Hill argues in response that he fairly presented his claim in Ground One to the Ohio

Sixth District Court of Appeals.  (ECF Doc. 12, p. 28.)  Further, even if the Court finds that he

did not fairly present the claim in Ground One to the state courts, he argues that this Court

should excuse his procedural default based on "cause and prejudice" and/or because he is

actually innocent.  (*Id.* at pp. 21, 26, 28, 29.)  In both his Petition and his Traverse, he asserts that

he attempted to appeal the issue to the Supreme Court of Ohio, but his "appeal was two days late

although [he] filed [his] appeal 8 days before the deadline."  (ECF Doc. 1, pp. 5, 12; ECF Doc.

12, p. 21.)  He also claims that his appellate attorney refused to raise the issue in his direct appeal

because that attorney was of the "opinion that the search was valid regardless of the fact that

[his] trial attorney never investigated it."  (ECF Doc. 1, p. 6; ECF Doc. 12, p. 29.)  Finally, he

asserts in his Traverse that he is actually innocent.[2]  (ECF Doc. 12, p. 26.)

### 1.      Whether the Claim in Ground One Was Procedurally Defaulted

The first way a petitioner may procedurally default is by failing "to comply with state

procedural rules in presenting his claim to the appropriate state court."  *See Williams*, 460 F.3d at

806.  This is the basis upon which Respondent argues Mr. Hill has procedurally defaulted

Ground One.  (ECF Doc. 9, pp. 15-16.)  To assess procedural default on this basis, courts in this

circuit apply the four-prong *Maupin* analysis.  *See Williams*, 460 F.3d at 807 (citing *Maupin*, 785

F.2d at 138).

Under the first two prongs of the *Maupin* analysis, this Court must determine whether

Mr. Hill failed to comply with a procedural rule and whether the state enforced that rule.  *See*

785 F.2d at 138.  The Supreme Court of Ohio has explained that:

> Under the doctrine of res judicata, a final judgment of conviction bars the convicted
> defendant from raising and litigating in any proceeding, except an appeal from that
> judgment, any defense or any claimed lack of due process that was raised or could
> have been raised by the defendant at the trial which resulted in that judgment of
> conviction or on an appeal from that judgment.

*State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967).

Since Mr. Hill's ineffective assistance of trial counsel claim—failure to investigate the

validity of the search warrant—would have been apparent from the record, he was required to

raise that claim as part of his direct appeal in accordance with Ohio's doctrine of *res judicata*.

*See Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).  He failed to comply with that procedural

---

[2] It is noted that Mr. Hill presents his actual innocence argument as a means to avoid dismissal based on the statute of limitations.  As discussed in Section I.E, *supra*, Respondent did not argue that dismissal was warranted based on a failure to timely file within the statute of limitations, and the undersigned accordingly makes no findings as to the statute of limitations.  Nevertheless, it is assumed that Petitioner's discussion of "actual innocence" was also intended as a response to Respondent's procedural default argument.  The undersigned therefore considers Mr. Hill's actual innocence arguments as part of the procedural default analysis.

rule, raising the claim in his petition for post-conviction relief but not in his direct appeal.  (ECF Doc. 9-1, pp. 148, 188.)  The first prong of the *Maupin* analysis has been met.

As to the second prong, it is also clear that the state courts enforced the procedural rule. First, the trial court denied Mr. Hill's petition for post-conviction relief which included a claim for ineffective assistance of trial counsel based on trial counsel's failure to challenge the validity of the "no knock" warrant, because that claim was "based on evidence available to him at trial" and he therefore "had the opportunity to raise [the] issue[] on direct appeal[.]"  (ECF Doc. 9-1, pp. 185, 187, 188.)  Indeed, the trial court found specifically that: "Evidence of trial counsel's alleged failures was in the record itself or was otherwise known to Hill at the time of his plea and sentencing, and his affidavit does not contain new evidence that was unavailable at the time of the trial . . . therefore . . . the issues in Hill's petition are barred by res judicata." (*Id*. at p. 188.) Second, after Mr. Hill appealed the trial court's decision on his petition for post-conviction relief, the state court of appeals affirmed that decision and again enforced the state procedural rule, finding Mr. Hill's post-conviction claims were barred by *res judicata* because he failed to identify evidence outside the record to support his post-conviction claims.  (*Id*. at pp. 270-71.) Thus, Mr. Hill failed to comply with a state procedural rule and the state courts enforced that procedural rule.  The second prong of the *Maupin* analysis has been met.

Under the third prong of the *Maupin* analysis, this Court must determine whether the procedural rule establishes an adequate and independent state law ground under which the claim may be procedurally defaulted.  *See* 785 F.2d at 138.  The Sixth Circuit has found that "Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by the Ohio courts." *Jacobs*, 265 F.3d at 417.  Thus, the third prong of the *Maupin* analysis has been met and the Court must find the claim in Ground One of the Petition to be procedurally defaulted unless Mr. Hill shows

17

"cause" excusing his failure to raise the claim in accordance with Ohio's doctrine of *res judicata* and actual prejudice resulting from the alleged constitutional violation. *Maupin*, 785 F.2d at 138.

Before addressing the issues of cause and prejudice, the undersigned observes that the record demonstrates an additional basis for procedural default on Ground One of the Petition, this one stemming from Mr. Hill's failure to appeal—to the Supreme Court of Ohio—the finding of the state court of appeals that his ineffective assistance of trial counsel claim was barred by *res judicata*. *See Williams*, 460 F.3d at 806. On federal habeas review, a district court cannot consider issues that were not presented at every level of the Ohio state court system. *See Baston*, 282 F.Supp.2d at 661. Where a petitioner has not pursued a claim "through the state's 'ordinary appellate review procedures,'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848), and "state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted," *id.* at 806. Here, Mr. Hill did not appeal the decision denying his petition for post-conviction relief to the Ohio Supreme Court, and that appeal is no longer available under Ohio law. *See State v. Nichols*, 463 N.E.2d 375, 378 (Ohio 1984); Ohio S. Ct. Prac. R. 7.01(A)(4)(c). Because Mr. Hill failed to present the claim in Ground One at every level of the Ohio state court system, the undersigned finds Ground One was procedurally defaulted on this basis as well.

The fourth prong of the *Maupin* analysis addresses whether Mr. Hill can show cause for his failure to follow the procedural requirements of Ohio's *res judicata* standard—here, by raising the relevant challenge on direct appeal—and that he was actually prejudiced by the constitutional error alleged in Ground One. 785 F.2d at 138. Similarly, to excuse his procedural default for failing to present the claim in Ground One at every level of the Ohio state court system, Mr. Hill must: (1) show cause for the default and demonstrate that actual prejudice

18

resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered.  *See Coleman*, 501 U.S. at 750.

### 2.     Whether Cause and Prejudice Excuse the Procedural Default

Mr. Hill argues that his procedural default should be excused based on "cause and prejudice" because (1) the appellate counsel for his direct appeal refused to argue that his trial counsel was ineffective for failing to challenge the validity of the search warrant "based on his opinion that the search warrant was valid regardless of the fact that [the] trial attorney never investigated it" (ECF Doc. 1, p. 6; ECF Doc. 12, pp. 29, 32), and (2) he attempted to file an appeal with the Supreme Court of Ohio, but the appeal was rejected based on late filing after being mailed eight days before the deadline (ECF Doc. 1 pp. 5, 12; ECF Doc. 12, pp. 21, 28-29).

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Mr. Hill's second argument—that there is "cause" to excuse his failure to pursue the claim through an Ohio Supreme Court appeal because he mailed the appeal eight days before the filing deadline, but it arrived two days late—must fail.  Mr. Hill has generally asserted, without evidentiary support, that an unspecified appeal was mailed to the Ohio Supreme Court "eight days prior to the deadline" but was denied filing because it arrived "two days late," (ECF Doc. 1, p. 12), and has further asserted that the appeal pertained to "both" the March 2020 appellate decision on direct appeal *and* the July 2020 appellate decision on his petition for post-conviction relief, (ECF Doc. 12, p. 21).  However, he has presented no evidence of the attempted filing and has given no specific details as to the date of the mailing or its reported rejection.  He has also

19

provided no explanation for how Ohio Supreme Court appeals of two *separate* appellate court decisions issued four months apart could *both* have been mailed "eight days prior to the deadline" and denied filing because they arrived "two days late." (ECF Doc. 1, p. 12; ECF Doc. 12, p. 21.) The record contains no evidence of Ohio Supreme Court filings or communications. Given the lack of evidence showing "something external . . . that cannot be fairly attributed to" Mr. Hill prevented him from timely appealing the July 2020 appellate decision on his petition for post-conviction relief to the Ohio Supreme Court, *Coleman*, 501 U.S. at 753, the undersigned finds Mr. Hill has not met his burden to show "cause" to excuse his procedural default for failing to present the claim in Ground One at every level of the state court system. This failing alone is enough to prevent a finding of cause and prejudice to excuse procedural default on Ground One.

Mr. Hill's first argument—that there is "cause" to excuse his failure to raise the claim in Ground One on direct appeal because his appellate counsel refused to challenge the issue "based on his opinion that the search warrant was valid regardless of the fact that [the] trial attorney never investigated it" (ECF Doc. 1, p. 6)—must also fail. The Supreme Court has explained:

> Attorney error *short of ineffective assistance of counsel* does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Murray*, 477 U.S. at 492 (emphasis added). While "[a]ttorney error that constitutes ineffective assistance of counsel" *may* serve as "cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, an attorney's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error,'" *id.* at 753 (quoting *Murray*, 477 U.S. at 488). Thus, the question is whether appellate counsel's actions constituted "ineffective assistance of counsel."

20

In *Strickland v. Washington*, the Supreme Court set forth two requirements to establish that an attorney was constitutionally ineffective. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, a petitioner must demonstrate "that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In such cases, the petitioner must show that the representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* 689. Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To meet this requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

While "[a]ttorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim *itself* is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see also Landrum v. Mitchell,* 625 F.3d 905, 916 (6th Cir. 2010). Here, the record shows Mr. Hill's claim for ineffective assistance of appellate counsel was procedurally defaulted.

21

A defendant claiming ineffective assistance of appellate counsel must apply to the Ohio Court of Appeals to reopen the direct appeal under Ohio App. R. 26(B). *Landrum*, 625 F.3d at 916. Here, Mr. Hill did timely file a rule 26(B) application arguing that appellate counsel was ineffective because he did not assert that trial counsel was ineffective for failing to object to the validity of the "no knock" search warrant and for failing to challenge the reliability and sufficiency of the search warrant affidavit. (ECF Doc. 9-1, pp. 306, 310-11.) On November 20, 2020, the Sixth District Court of Appeals considered all four proposed assignments of error relating to trial counsel's failure to challenge the validity of the search warrant and found no merit in the assertion that appellate counsel was constitutionally ineffective because he failed to raise those claims in his direct appeal. (*Id*. at pp. 306, 311-14.) The court explained:

> It is undisputed that appellant's trial counsel did not challenge the probable cause underlying the search warrant. Appellant's trial counsel also did not challenge the affidavit underlying the search warrant as failing to comply with the statutory requirements necessary to obtain a waiver of the knock and announce requirement. Appellant's argument fails because he fails to show how this issue would have resulted in a reasonable probability of success on appeal.

> "The Fourth Amendment of the United States Constitution and Article l, Section 14 of the Ohio Constitution provides protections against unreasonable search and seizure, and require probable cause for issuance of a warrant." *State* v. *Dockum*, 6th Dist. Wood No. WD-19-079, 2020-Ohio 4163, ¶ 21. Generally, a search warrant lacking probable cause is unreasonable and violates a defendant's constitutional rights. *State* v. *Williams,* 173 Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717, ¶ 12 (6th Dist.). Once a court has determined search warrant was executed in violation of a defendant's constitutional rights, the court must determine whether the suppression of any evidence collected through that search warrant must be excluded at trial. *State* v. *Hoffman,* 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 428,124. That determination is not automatic but is based on a balancing of the benefits of excluding such evidence as a deterrent to future misconduct against the "heavy cost" of suppressing the truth and potentially allowing an offender to remain in the community without punishment for their conduct. *Id.* at 25, citing *Davis v. United States* 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Here, we do not need to analyze these factors to determine whether appellant has a colorable claim of ineffective assistance on appeal because he has failed to explain how even a successful challenge of the underlying search warrant had a prejudicial effect on his trial.

Appellant was convicted of seven counts of felonious assault and one count of possession of a weapon while under disability. *Hill,* 6th Dist. Lucas No. L-18-1160, 2020-Ohio-1237, at ¶ 9. Appellant's convictions were based on his conduct in discharging a firearm at the officers executing the search warrant. *Id.* at ¶ 3-9. At no point during appellant's trial did the state introduce evidence collected as a result of the search warrant in support of the charges against him. In fact, the state filed a motion in limine to exclude any evidence collected from the search warrant from being introduced at trial to avoid any jury confusion as to what charges they were to consider. *Id.* at ¶ 3. The trial court granted the state's motion without objection from appellant. *Id.* Appellant's convictions, therefore, were based on evidence entirely independent from that collected pursuant to the search warrant. Thus, any evidence that could have been excluded had appellant's trial counsel been successful in challenging the validity of the search warrant had already been excluded.

Moreover, appellant's application fails to explain how he suffered any prejudice by his trial counsel's failure to challenge the search warrant. *See State v. Bradley,* 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989), citing *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that a defendant must show prejudice arising from counsel's performance in order to show ineffective assistance of counsel). Appellant's convictions were not based on the evidence he now claims should have been excluded. As a result, appellant's application fails to demonstrate that there was a reasonable probability of success had his appellate counsel assigned trial counsel's purported ineffective assistance as error in his direct appeal. *Were,* 120 Ohio St.3d 85, 2008-Ohio-5277, 896 N.E.2d 699, at ¶ 11.

(ECF Doc. 9-1, pp. 311-14.)  Mr. Hill has neither argued nor demonstrated that he appealed the denial of his App. R. 26(B) application to the Ohio Supreme Court.  Because Mr. Hill failed to present his argument for ineffective assistance of appellate counsel at every level of the Ohio state court system, this argument was procedurally defaulted.

Nevertheless, where a claim for ineffective assistance of appellate counsel has been procedurally defaulted, the Supreme Court has held "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim." *Edwards*, 529 U.S. at 453. (emphasis in original).  That standard has not been met here.

Mr. Hill argues generally that "the conduct of his appellate counsel and the clear and improper finding of guilty and sentencing on the gun specifications" are sufficient to show "cause" external to his own actions to excuse procedural default.  (ECF Doc. 12, p. 29.)  He also

23

makes a conclusory argument that his "Petition demonstrates the ineffective assistance of counsel in failing to raise/appeal the matters . . . and . . . [he] has established cause to excuse any procedural defaults." (*Id.* at p. 32.)  His generic arguments appear to be intended to jointly address "cause" to excuse the procedural default of his ineffective assistance of counsel claims against both appellate and trial counsel.  The undersigned finds both arguments conclusory and undeveloped, and therefore subject to waiver. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

For the reasons stated above, Mr. Hill has not met his burden to show that an external factor not fairly attributed to him caused his procedural default on the claim for ineffective assistance of appellate counsel resulting from his failure to appeal the rule 26(B) decision to the Ohio Supreme Court.  Further, even if he could show "cause" to excuse procedural default of his ineffective assistance claim against *appellate* counsel, he has failed to show that ineffective assistance of appellate counsel supplies "cause" to excuse his procedural default on the claim for ineffective assistance of *trial* counsel in Ground One, and has failed to show that he suffered "prejudice" due to appellate counsel's failure to challenge trial counsel's performance on appeal.

Under the first *Strickland* requirement, counsel's performance must fall below an objective standard of reasonableness based on all the circumstances of the case.  466 U.S. at 688. The state appellate court did not address this factor because it found Mr. Hill had "failed to explain how even a successful challenge of the underlying search warrant had a prejudicial effect on his trial." (ECF Doc. 9-1, p. 312.)  In his Petition and Traverse, Mr. Hill has not identified any legal authority demonstrating that appellate counsel acted below an objective standard of

reasonableness in refusing to challenge trial counsel's failure to investigate the validity of the search warrant affidavit.  (ECF Doc. 12, pp. 30-34.)  This requirement is not met.

Under the second *Strickland* requirement, counsel's errors must have been so deficient as to deprive Mr. Hill of a fair trial.  466 U.S. at 687.  Mr. Hill has also failed to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The state court of appeals observed that Mr. Hill's convictions "were based on evidence entirely independent from that collected pursuant to the search warrant," so that any challenge to the validity of the warrant would only have excluded evidence that "had already been excluded."  (ECF Doc. 9-1, p. 313.)  For this reason, the state court found Mr. Hill's rule 26(B) application had failed to show a reasonable probability of success if Mr. Hill's appellate counsel had challenged trial counsel's ineffective assistance on direct appeal.  (*Id.* at pp. 331-14.)  The undersigned finds the same analysis appropriate here, and that Mr. Hill has not met his burden to prove ineffective assistance of appellate counsel, as necessary to show "cause" to excuse his procedural default of the claim in Ground One.

As to the additional requirement that "actual prejudice" resulted from the violation of federal law alleged in Ground One, *Coleman*, 501 U.S. at 750, Mr. Hill has failed to present any legal authority showing that the invalidation of the search warrant would create a valid defense to Mr. Hill's felonious assault convictions.  Indeed, Ohio courts have rejected such claims.

For example, in *State v. Christian*, a defendant who was charged with felonious assault on a police officer argued that the officer had illegally entered his home without a search warrant.  2005 WL 704866, * 3 (Ohio App. Ct. 2005).  He claimed that his trial counsel erred by failing to file a motion to suppress, asserting he would never have had the opportunity to commit felonious assault if the officer had not illegally entered his home, and that evidence of the assault

25

should have been held inadmissible. *Id.* at * 4. The court of appeals explained that "felonious assault of an officer after an unlawful entry is not justified or privileged conduct." *Id.* (citing *State v. Howard*, 75 Ohio App. 3d 760, 770 (1991)). Thus, even if the court assumed the officer's entry was unlawful, it found the defendant could not show he was prejudiced by counsel's failure to file a motion to suppress because the defendant "was in no way justified or privileged" to commit felonious assault on a peace officer. *Christian*, 2005 WL 704866, * 4.

In *State v. Jobes*, the state court of appeals reversed a trial court order granting a motion to suppress evidence acquired after police entered a defendant's home without permission, explaining that the "sanctity of the home" did not "justif[y] a felonious assault on police officers inside the home as distinct from outside" and finding that the minimal time between the "illegal entry by the police officers" and the defendant's threat of assault on the officers did not excuse the defendant's assault on the officer. 2004 WL 473334, * 3-4 (Ohio App. Ct. 2004); *see also State v. Cammon*, 2009 WL 2894471, * 5 (Ohio App. Ct. 2009) (concluding that there was no reasonable basis for trial counsel to file a motion to suppress based on an alleged lack of probable cause because "even assuming that the officer lacked probable cause to arrest Cammon for failure to disperse, the unlawful arrest [did] not justify an assault on a peace officer").

For the reasons set forth above, the undersigned finds Mr. Hill has not met his burden to demonstrate "cause" to excuse the procedural default of Ground One or "actual prejudice" resulting from the alleged violation. The undersigned turns next to Mr. Hill's claim that any procedural default should be excused because he is actually innocent of the offenses.

### 3. Whether Procedural Default Should Be Excused Based on Actual Innocence

Where a petitioner cannot demonstrate cause and prejudice sufficient to overcome procedural default, that default can be excused if he shows there will be a "fundamental

26

miscarriage of justice" if his claims are not considered.  *See Coleman*, 501 U.S. at 750.  "A

fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"

*Lundgren*, 440 F.3d at 764 (quoting *Murray*, 477 U.S. at 496).  For an actual innocence claim to

be credible, a petitioner must "support his allegations of constitutional error with new reliable

evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324.  He must

further "show that it is more likely than not that no reasonable juror would have convicted him in

light of the new evidence."  *Id.* at 327.  This is intended to permit petitioners with "truly

extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice."  *Id.* (internal

quotations omitted).  Notably, "'actual innocence' means factual innocence, not mere legal

insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

       In support of his actual innocence claim, Mr. Hill presents an affidavit from Glenn

Kowalski, a defendant in an unrelated criminal case, and a signed, notarized letter from Mr.

Kowalski.  (ECF Doc. 12, p. 26, 42-45; ECF Doc. 12-1; ECF Doc. 12-2.)  In the affidavit, Mr.

Kowalski avers that Detective Jason Picking was the affiant for a warrant in his own criminal

case, and for the search warrant in Mr. Hill's case.  (ECF Doc. 12, p. 26; ECF Doc. 12-2, p. 2.)

He further avers that the warrant in his case was obtained using false information, and that the

case against him was dismissed because the warrant was "illegal and wrongfully executed."

(ECF Doc. 12-2, p. 2.)  He also asserts, without stating the basis for his understanding, that

Detective Pickering "used the same improper procedure to obtain warrants in both cases" and

that "the practice and procedure of the Lucas County Sheriff's Department was to obtain illegal

warrants."  (*Id.*)  Mr. Kowalski's letter includes more specific information regarding the alleged

inadequacies of the warrant used in his own case, the impact of those inadequacies on the

charges against him, and the basis for his own belief that "the case against [him] was originally fabricated to obtain a search warrant by Det. Jason Picking illegally." (ECF Doc. 12-1.)

Based on this evidence, Mr. Hill states he has "offered argument and evidence in support of the proposition that he is actually innocent of the offenses for which he was convicted." (ECF Doc. 12, p. 26.)  He appears to be arguing that he is "actually innocent" of felonious assault on peace officers because the officers illegally entered his home under a deficient search warrant. This argument fails for two reasons.  First, the only facts given to support Mr. Kowalski's averments relate to Mr. Kowalski's own warrant and criminal prosecution, with no new facts or evidence to support any allegations regarding the warrant in Mr. Hill's case.  Second, even if the affidavit were found to constitute new and reliable evidence, Mr. Hill has not explained how that evidence is exculpatory or proves his factual innocence.  *See Bousley*, 523 U.S. at 623 ("[A]ctual innocence' means factual innocence, not mere legal insufficiency.")  Mr. Hill does not deny that he fired his weapon.  (ECF Doc. 9-1, p. 155; ECF Doc. 9-7, p. 181.)  As outlined in Section III.C.2, *supra*, Ohio courts have found that an officer's illegal entry into a private residence "in no way justifie[s] or privilege[s]" commission of a felonious assault on a peace officer. *Christian*, 2005 WL 704866, * 4; *see Jobes*, 2004 WL 473334, * 3; *Cammon*, 2009 WL 2894471, * 5.  Given the foregoing, the undersigned finds Mr. Hill has not met his burden to show that his procedural default should be excused due to a finding of "actual innocence."

For the reasons set forth above, the undersigned finds the claim in Ground One was procedurally defaulted, and that Mr. Hill has not met his burden to show cause and prejudice or a fundamental miscarriage of justice to excuse that default.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground One with prejudice.[3]

---

[3] In light of Mr. Hill's procedural default of Ground One, it is unnecessary to consider Respondent's alternative arguments for denial of Ground One on the merits.

D.      **Ground Two**

In Ground Two, Mr. Hill argues that that he was "illegally sentenced for five firearm specifications after it was established that [he] did not know how many officers were at [his] door." (ECF Doc. 1, p. 7.)  Respondent argues that Mr. Hill's sentencing claim is not cognizable on federal habeas review.  (ECF Doc. 9, pp. 20-22.)  Respondent also argues that Ground Two is procedurally defaulted because Mr. Hill failed to raise the claim in his direct appeal and his assertion of ineffective assistance of trial counsel for not objecting to the imposition of consecutive sentences did not preserve the underlying claim that the trial court erred in imposing the sentence.  (*Id*. at pp. 22-23.)  Respondent further argues that Mr. Hill has not shown that cause and prejudice or a miscarriage of justice warrant excusing the default.  (*Id*. at pp. 24-25.)  Mr. Hill does not directly respond to Respondent's contention that the sentencing claim is not cognizable.  He argues in a summary manner that any procedural default should be excused because of the "conduct of his appellate counsel and the clear and improper finding of guilty and sentencing on the gun specifications."  (ECF Doc. 12, p. 29.)  He also generally contends he is "actually innocent."  (*Id*. at p. 26.)

1.      **Whether Claim in Ground Two Is Cognizable**

A challenge to a "state court's interpretation and application of its sentencing laws and guidelines" is not cognizable on federal habeas review.  *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003); *see also Thorne v. Lester*, 641 F. App'x. 541, 544 (6th Cir. 2016) (finding federal habeas relief was unavailable for errors of state law, which included the petitioner's claim that the state court misapplied the state merger rule).  This is because "[f]ederal habeas corpus relief does not lie for errors of state law."  *Howard*, 76 F. App'x. at 53 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)

29

("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two as not cognizable to the extent that the claim is based on asserted errors of state law.  To the extent that Mr. Hill's sentencing claim is based on an alleged violation of his rights under the Double Jeopardy clause, the undersigned finds that his claim was procedurally defaulted for the reasons explained below.

### 2.     Whether Claim in Ground Two Was Procedurally Defaulted

As discussed above, a petitioner may procedurally default in two ways.  First, he may procedurally default by failing "to comply with state procedural rules in presenting his claim to the appropriate state court," *Williams*, 460 F.3d at 806, subject to the four-pronged *Maupin* analysis, 785 F.2d at 138.  Second, he may "procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848).

Here, Respondent argues that Ground Two is procedurally defaulted under the second standard because Mr. Hill did not challenge the trial court's imposition of multiple sentences on his firearm specifications on direct appeal.  (ECF Doc. 9, p. 22.)  Under that standard, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson*, 459 U.S. at 6; *Picard*, 404 U.S. at 275-76; *see also Fulcher*, 444 F.3d at 798.  To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans*, 228 F.3d at 681.

Mr. Hill did not fairly present the claim in Ground Two in his direct appeal, with his closest argument being that the trial court erred in denying his Rule 29 motion in part because there was insufficient evidence that he was aware of the number of officers outside his home, or even that the individuals were officers.  (*Id*. at pp. 22-23; ECF Doc. 9-1, pp. 100-03.)  The closest Mr. Hill came to presenting the claim in Ground Two was in his state court petition for post-conviction relief, where he argued that his trial counsel was ineffective because he did not object when the trial court sentenced him to consecutive sentences for allied offenses of similar import, in violation of the state and federal constitutions.  (ECF Doc. 9-1, p. 163-66.)  In response to that petition, both the trial court and court of appeals concluded that the claim for ineffective assistance of trial counsel was barred by *res judicata* because he could have raised the issue on direct appeal.  (*Id*. at pp. 186-88, 269-70.)  The trial court also addressed the merits of Mr. Hill's claim that trial counsel was ineffective for not raising the issue before sentencing and concluded he was appropriately sentenced pursuant to Ohio's sentencing statutes, explaining:

> Of the eight charges, the seven felonious assault charges each carried a three-year firearm specification. These charges were related to "same act or transaction" for purposes of R.C. 2929.14(D)(1)(b). Because felonious assault is one of the offenses specified in R.C. 2929.14(B)(1)(g), the Court was obligated to impose the prison term specified for each of the two most serious specifications for which Hill was convicted. The Court also had discretion to impose on Hill the prison term specified "for any or all of the remaining specifications." *Ellis,* 2015-Ohio-2120 at *P63. The Court imposed all seven specifications, running the firearm specification for Count 3 concurrent with the specification for Count 4, and running the specification for Count 6 concurrent with the specification for Count 7. This sentence was within the Court's discretion, set forth in 2929.14(B)(1)(g).

(ECF Doc. 9-1, pp. 192-93.)  Mr. Hill did not appeal the state court of appeals decisions on his direct appeal or his petition for post-conviction relief to the Ohio Supreme Court.

The record thus reflects that Mr. Hill failed to fairly present the claim in Ground Two on direct appeal, resulting in a procedural bar under *res judicata*.  When he raised a related claim in

his subsequent petition for post-conviction relief, the state courts found the claim barred by *res judicata* and lacking in merit.  Moreover, Mr. Hill's state post-conviction petition raised the issue through a claim for inadequate assistance of trial counsel, which is insufficient to preserve the underlying sentencing claim set forth in Ground Two.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) (citing *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir.2008) ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct.") (internal quotation marks omitted).).  Finally, Mr. Hill did not appeal the state court decisions to the Ohio Supreme Court and is now procedurally barred from making such an appeal.  *See Nichols*, 463 N.E.2d at 378; Ohio S. Ct. Prac. R. 7.01(A)(4)(c).

Considering the foregoing, the undersigned concludes that Mr. Hill did not fairly present the claim set forth in Ground Two to the state courts at each and every level.  The undersigned therefore turns to whether Mr. Hill's procedural default of Ground Two should be excused.

### 3.    Whether Procedural Default Should Be Excused

To excuse his procedural default, Mr. Hill must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered.  *See Coleman*, 501 U.S. at 750.  Mr. Hill generally asserts that "cause" to excuse his procedural defaults includes "the conduct of his appellate counsel and the clear and improper finding of guilty and sentencing on the gun specifications."  (ECF Doc. 12, p. 29.)  He also argues that this Court should review the merits of any unexhausted claims "to correct the fundamentally and unconstitutionally unjust incarceration of the Petitioner."  (*Id*. at p. 30.)

The undersigned finds Mr. Hill's arguments on cause and fundamental miscarriage of justice to be underdeveloped and subject to waiver. *See McPherson,* 125 F.3d at 995-96. As to "cause," he has offered no clear argument or evidence to demonstrate that "something external . . . that cannot be fairly attributed to him" prevented him from raising the claim in Ground Two on direct appeal or appealing the court of appeals' decision to the Ohio Supreme Court. *See Coleman*, 501 U.S. at 753. Although Mr. Hill filed an App. R. 26(B) application, the state court of appeals found no merit to Mr. Hill's claims of ineffective assistance of appellate counsel and Mr. Hill did not timely appeal that decision to the Supreme Court of Ohio. (ECF Doc. 9-1, pp. 306-15.) As to any "miscarriage of justice," the undersigned has already concluded that Mr. Hill has not established a credible claim of actual innocence. While Mr. Hill argues that this Court should review the merits of any unexhausted claims "to correct the fundamentally and unconstitutionally unjust incarceration of the Petitioner" (*Id*. at p. 30), "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal citation omitted); *see also Schlup v. Delo*, 513 U.S. 298, 322 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the] [Supreme] Court [has] explicitly tied the miscarriage of justice exception to the petitioner's innocence.").

For the reasons set forth above, the undersigned finds the claim in Ground Two was procedurally defaulted, and Mr. Hill has not met his burden to show cause and prejudice or a

fundamental miscarriage of justice to excuse that default.  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Two with prejudice.[4]

## IV.     Request for Evidentiary Hearing

Mr. Hill requests an evidentiary hearing, asserting that he "has highlighted existing evidence in the Record establishing that a hearing might elicit additional evidence material to his claims and grounds for relief."  (ECF Doc. 12, p. 38.)  Mr. Hill does not identify for the Court the specific "existing evidence" he is referring to and he does not identify what additional evidence he contends might be elicited.  He also has not demonstrated that evidence he seeks to develop could not have been previously discovered through the exercise of due diligence.  *See generally* 28 U.S.C. § 2254(e)(2).  Given Mr. Hill's procedural defaults and his conclusory and underdeveloped request for an evidentiary hearing, the undersigned finds that Mr. Hill has not shown that an evidentiary hearing is warranted or appropriate.  The request for a hearing is accordingly **DENIED**.

---

[4] In light of Mr. Hill's procedural default of Ground Two, it is unnecessary to consider Respondent's alternative arguments for denial of Ground Two on the merits.

## V. Recommendation

For the reasons stated above, the undersigned recommends that the Court **DISMISS**

Ground One with prejudice on the basis of procedural default and **DISMISS** Ground Two as

non-cognizable and procedurally defaulted.

The request for an evidentiary hearing is **DENIED**.


Dated: December 4, 2023


/s/ Amanda M. Knapp
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE



## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may forfeit the right to appeal the District Court's order.  *See
Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106
S. Ct. 466, 88 L. Ed. 2d 435 (1985).