UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMAINE HILL,                          )      CASE NO.  3:21-cv-00690
                                       )
          Petitioner,                  )      JUDGE BRIDGET MEEHAN BRENNAN
                                       )
v.                                     )
                                       )
WARDEN KENNETH BLACK,                  )      **MEMORANDUM OPINION**
                                       )      **AND ORDER**
          Respondent.                  )

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge

Amanda M. Knapp recommending that Petitioner Jamaine Hill's Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 be denied and the claims dismissed with prejudice.  (Doc.

No. 13.)  Petitioner timely raised six objections to the R&R.  (Doc. No. 15.)

For the reasons that follow, Petitioner's objections are OVERRULED, the R&R is

ACCEPTED, the petition for writ of habeas corpus is DENIED in its entirety, and the Petition is

DISMISSED with prejudice.

I.   **Background**

The facts and procedural history relevant to the Petition are taken from three opinions

issued by the Ohio Court of Appeals.  *See State v. Hill*, No. L-18-1160, 2020 WL 1528014 (Ohio

Ct. App. March 31, 2020) (direct appeal from conviction and sentence); *State v. Hill*, No. L-19-

1248, 2020 WL 4249984, at *1 (Ohio Ct. App., July 24, 2020) (appeal from denial of state court

petition for postconviction relief); *State v. Hill*, No. L-18-1160 (Ohio Ct. App. Nov. 20, 2020)

(motion to reopen appeal under Ohio R. App. P. 26(B)) (Doc. No. 9-1 at 363-72.)

1

Petitioner's federal habeas submissions do not challenge the presumption of correctness of the facts as written by the state appellate court. (*See* Doc. Nos. 1, 12, 15.)[1]

### A. The Search Warrant and Petitioner's Trial

The Ohio Court of Appeals recounted the facts and circumstances of Petitioner's criminal conduct and conviction, which are block-quoted below.

> On November 16, 2017, officers from the Toledo Police Department SWAT team were executing a no-knock search warrant at [Petitioner's] residence . . . in Toledo, Ohio. Detective J.P., the victim in Count 2 of the indictment, obtained the warrant and coordinated with the SWAT team on its execution.[2] At approximately 2:00 a.m., the SWAT team and supporting officers, including J.P., arrived at [Petitioner's] residence. Officer R.K., the victim in Count 1 of the indictment and a member of the SWAT team, was the first to approach the door of the residence. He was followed immediately by officers R.J. and P.F., victims in Counts 3 and 4 of the indictment, respectively.
>
> When the team reached [Petitioner's] doorway, they encountered a metal security door. R.K. opened the security door and let it hang to the right side of the doorway. Officer B.K., who remained on the front lawn, then fired a distractionary device through the front window of the residence. The device consisted of small wooden dowels, known as "knee knockers," which bounce through the room into which they are fired with the purpose of distracting any individuals present.
>
> Immediately after the knee knockers were deployed, R.J. shouted "police, search warrant." Nearly simultaneously, P.F. swung a battering ram into the residence's front door forcing it open. R.K., serving as the "point man" and carrying a shotgun, immediately proceeded through the now-open doorway.

---

[1] Under the Antiterrorism and Effective Death Penalty Act of 1998 ("AEDPA"), "a determination of a factual issue made by a State court shall be presumed to be correct," and a habeas petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). Moreover, the Supreme Court has held that Congress did not intend "to require district court review of a magistrate's factual . . . conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

[2] The Affidavit for Search Warrant (which Petitioner himself made part of the record as an exhibit to his postconviction petition in the state trial court) described confidential sources who informed Toledo police of heroin sales occurring at Petitioner's home and Petitioner's possession of a handgun. (*See* Doc. No. 9-1 at 233-38.)

Upon entering the doorway, R.K. looked to his left to see [Petitioner] holding a pistol aimed at him. [Petitioner] began firing and R.K. immediately retreated through the doorway and yelled "shots fired." R.K., R.J. and P.F. remained on [Petitioner's] porch until appellant stopped shooting. At that point, they, along with the remaining SWAT team members entered the residence and found [Petitioner] lying on a couch. The firearm appellant used was not immediately observable. The SWAT team completed a search of the house . . . . They secured [Petitioner] and began searching the area in his immediate vicinity. In doing so, R.J. moved a sheet from the couch and discovered a pistol. [Petitioner] was then arrested.

While the SWAT team was executing the warrant, J.P. was tasked with watching the exterior of the residence to assist in apprehending any individuals running away. As the doorway was breached, J.P. began walking closer to the residence. As he moved, he was struck in the face by one of the bullets [Petitioner] fired. J.P. received medical treatment at the scene and was transported by ambulance to the hospital. J.P. suffered significant injuries and ultimately underwent surgery to replace a portion of his jawbone with titanium. . . . No other officers suffered physical injuries during the incident.

*Hill*, 2020 WL 1528014 at *1-*2.

On November 27, 2017, a Lucas County grand jury charged Petitioner with seven counts of felonious assault of a peace officer in violation of Ohio Revised Code Section 2903.11(A)(2) and (D), felonies of the first degree, with firearm specifications in violation of Ohio Revised Code Section 2941.145(A), (B), (C), and (F) (Counts 1-7), as well as one count of possessing a weapon while under disability in violation of Ohio Revised Code Section 2923.13(A)(3) and (B), a felony of the third degree (Count 8). (Doc. No. 9-1 at 63-69; Doc. No. 13 at 1288.)

The State filed a notice of intent to use evidence of past crimes, wrongs, or acts. (Doc. No. 9-1 at 99-105.) Specifically, the State sought to admit testimonial evidence that, immediately before executing the search warrant, officers were advised that Petitioner was in possession of a handgun. (*Id.* at 101.) According to the State, this evidence was relevant because it "explain0[ed] the sequence of events, the investigative actions of police and the particular manner in which S.W.A.T. made entry into the residence," and "why the officers wore body armor, deployed a [distractionary device] through the front window . . . and breached the

front door without knocking." (*Id.* at 103.)  Also, the prosecution and defense reached a stipulation regarding Petitioner's criminal record.  The trial court held that this evidence would be admissible.  (*See id.* at 126-27.)

The State also filed a motion *in limine* to exclude any evidence of drug contraband collected by the police during the search (*i.e.*, after the shooting) at Petitioner's home.  (*Id.* at 107-15.)  Some evidence had been lost (a packet of heroin) and other evidence had been reevaluated (counterfeit currency) before trial.  (*See id.*)  Petitioner was not charged with drug trafficking or forgery offenses, the State reasoned, and so exploring such evidence would not be probative of the gun-related charges being tried.  (*Id.*)  The motion *in limine* was granted as modified by the trial court.  (*Id.* at 126-27.)  The court ruled that the existence of a search warrant was relevant.  But the basis for obtaining the warrant and the items listed for seizure were held to be immaterial.  (*See id.*)

Petitioner requested a jury instruction on mistake of fact, which he argued would constitute a defense to the felonious assault charges.  (*See id.* at 117-18.)  The State objected to this instruction, arguing that Petitioner's knowledge that the victims were police officers was not an essential element of the offense.  (*Id.* at 121-24.)  A jury could find him guilty of these offenses even if they also conclude that Petitioner was not aware that the victims were police officers.  (*Id.*)  The trial court refused Petitioner's mistake of fact instruction.  (*Id.* at 126-27.)

On June 11, 2018 the jury trial commenced.  (Doc. No. 9-1 at 131-34.)  When the State rested, Petitioner moved under Ohio Rule 29 for acquittal solely as to Counts 3, 4 and 7. Petitioner's acquittal motion was denied.

> [Petitioner] testified at trial.  He stated that at approximately 1:30 A.M. on the morning of the incident, he fell asleep on his couch while watching television.  At that time, he was tired and disoriented as a side effect of prescribed painkillers he was taking following a recent surgery.  He next recalled awakening to the sound of

4

glass breaking and feeling glass falling on him.  He stated he was confused due to the effects of the painkillers and took a moment to process what was happening. Also, he was already nervous about someone breaking into his residence due to a window at the rear of the house having been broken earlier in the evening.  After he awoke, he heard a second window break and reached for a gun sitting nearby. He then heard a commotion on the porch and saw his door knob turning suggesting someone was trying to gain entry to the residence.  He immediately fired his gun toward the door.  He testified that prior to firing the weapon that the door did not open and no officers had entered the residence.  He stated his reasoning for firing the gun was that he feared for his and his wife's safety.  Finally, [Petitioner] testified that after he finished firing his weapon, he saw the SWAT officers entering the doorway and, realizing they were police officers, laid back down and held his hands up.  As the officers approached him, [Petitioner] offered an apology and stated he did not realize he was shooting at police officers.

*Hill*, 2020 WL 1528014, at *2.

On June 15, 2018, the jury convicted Petitioner on all eight felony counts.  The trial court then sentenced Petitioner.  The trial court held that the prison terms resulting from the convictions on Counts 1, 2, 5, and 8 each would run consecutive to all other counts.  The trial court held that the prison terms for Counts 3 and 4 would run concurrent to one another, but consecutive to the other counts.   Likewise, the trial court held that the prison terms for Counts 6 and 7 would run concurrent to one another, but consecutive to the other counts.  In the aggregate., the total prison time of the sentence was 47 years.  The trial court's judgment of conviction and sentence were entered the same day.  (*Id.*)

### B.  Petitioner's Direct Appeal

On July 17, 2018, Petitioner filed a direct appeal raising three assignments of error:

1.  The trial court erred in denying [his] Crim. R. 29 motion for acquittal;

2.  The jury's verdict was against the manifest weight of the evidence presented at trial; and

3.  The trial court committed error to the prejudice of [Petitioner] by imposing the costs of prosecution without consideration of [Petitioner's] present or    future ability to pay.

(Doc. No. 9-1 at 141.)  On June 7, 2019, the State filed its appellee brief.  On March 31, 2020, the Ohio Court of Appeals affirmed in part and reversed in part the judgment of the trial court. *Hill*, 2020 WL 1528014, at *1.  The Court sustained Petitioner's third assignment of error and reversed the trial court's award of prosecution costs.

The appellate court overruled Petitioner's first and second assignments of error – sustaining both the jury verdict and the trial court's sentence.

> [Petitioner] makes two arguments why the trial court's denial of his Crim. R. 29 motion constitutes error.  [Petitioner's] first argument contends the enhancement of his felonious assault convictions to a first-degree felony was error because he did not know the individuals entering his residence were peace officers.
>
> Generally, a violation of R.C. 2903.11(A) is a second-degree felony.  However, when the victim is a peace officer, the offense is enhanced by operation of law to a first-degree felony.  R.C. 2903.11(D)(1)(a).  [Petitioner] argues that because the state did not present sufficient evidence that he knew the victims were peace officers, the peace officer enhancement should not apply to his convictions.  [Petitioner's] argument presumes the state had the burden of proving [he] knew at the time of the shooting that the victims were police officers.
>
> We have previously considered this specific argument and found it to be without merit.  . . .  [T]he state need not have proved that [a defendant] knew that he was shooting at [ ] police . . . in order to enhance the offense under R.C. 2903.11(A)(2)(D)(1), the peace officer specification.

2020 WL 1528014, at *3 (discussing Ohio case law).

> [Petitioner] next argues that the state failed to present sufficient evidence he was aware of the number of SWAT team members preparing to enter on the no-knock warrant.  Because he was unaware of the number of officers, appellant argues, he could not have knowingly attempted to cause those unknown officers physical harm in violation of R.C. 2903.11(A)(2).  This argument is also without merit.
>
> We have previously determined that a defendant's knowledge of the number of potential victims is unnecessary in proving the elements of felonious assault.  . . .  [Petitioner] indiscriminately fired a gun into an area without knowledge of how many individuals he might endanger.  . . .  [I]t is the firing of a weapon into an area without knowledge of its occupants that is sufficient to establish a knowing attempt to cause physical harm.

*Id*. at *4-*5.

6

Petitioner did not appeal to the Ohio Supreme Court from the appellate court's above-quoted opinion in the direct appeal.  (Doc. No. 13 at 1291.)

### C.  State Court Post-Conviction Petition

On August 30, 2019, while his direct appeal was pending, Petitioner filed a *pro se* petition for post-conviction relief.

1. Trial counsel rendered ineffective when not objecting to the court sentencing petitioner to consecutive sentences that are otherwise allied offenses of similar import, violating [P]etitioner's Sixth Amendment right to the United States Constitution, as well as Article I § 10 to the Ohio Constitution.

2. Trial counsel rendered ineffective under the Sixth Amendment to the United States Constitution as well as Article I § 10 of the Ohio Constitution when not objecting to the validity of the "no knock search warrant" because the warrant was not in accordance with R.C. § 2933.231, rendering the said warrant insufficient.

(Doc. No. 9-1 at 220-29.)

On October 4, 2019, the trial court denied the post-conviction petition.  (*See id.* at 239-53.)  The trial court reasoned that "[n]either issue [Petitioner] raises is based on newly discovered or previously unavailable evidence[.]"  Petitioner "had the opportunity to raise these issues on direct appeal, and his petition fails to present evidence outside the record sufficient to avoid the application of *res judicata*."  (*Id.* at 245.)  Alternatively, the trial court found that "the substantive issues [raised] lack merit."  (*Id.*)

### D.  Petitioner's Second Appeal

On October 29, 2019, Petitioner filed *pro se* a notice of appeal from the denial of the state court petition.  (*Id.* at 255.)  At some point counsel appeared for Petitioner and briefed two assignments of error.

1. The trial court violated [Petitioner's] due process rights afforded to him under the Fifth and Fourteenth Amendments to the United States Constitution.

2.  The trial court failed to make any findings of fact or conclusions of law when it denied [Petitioner's] petition for postconviction relief.

*State v. Hill*, No. L-19-1248, 2020 WL 4249984, at *1 (Ohio Ct. App., July 24, 2020). Petitioner urged that the lack of a hearing, along with absence of findings of fact and conclusions of law, showed a lack of basic due process. (Doc. No. 9-1 at 274.) On February 28, 2020, the State filed an appellee brief. (*Id.* at 293-320.)

On July 24, 2020, the Ohio Court of Appeals affirmed the denial of the postconviction petition. *State v. Hill*, 2020-Ohio-3824, 2020 WL 4249984, at *4 (Ohio App. Ct. 2020).[3] On Petitioner's first assignment of error, the court found that Petitioners claims were "barred under *res judicata* and were subject to dismissal without a hearing." Accordingly, Petitioner was not denied due process. *Id.* at *3. With respect to Petitioner's second assignment of error, the court found that the trial court's entry "apprised [Petitioner] of the basis for the dismissal and enabled this court to properly determine this appeal" and that any "failure to delineate a specific section of its entry as findings of fact or conclusions of law [was] not error." *Id.*

Petitioner did not appeal from this appellate court decision to the Ohio Supreme Court. (Doc. No. 13 at 1292.)

### E.  Application to Reopen Appeal

On August 7, 2020, Petitioner filed a motion for leave to file a delayed Application for Reopening with the Ohio Court of Appeals pursuant to Ohio R. App. P. 26(B). (Doc. No. 9-1 at 332-43.) In this motion, Petitioner argued that his application should be accepted under COVID-19 tolling provisions. He also argued that the pandemic prevented the timely filing of the

---

[3] The R&R excerpted facts from this second appellate court opinion. (*See* Doc. No. 13 at 1294.) As with the decision on direct appeal, Petitioner does not object to the appellate court's fact assertions – not as to facts underlying the criminal conviction, or as to facts regarding what transpired in the state court proceedings.

application, as did his counsel.  (*Id.* at 333.)  Petitioner challenged the effectiveness of appellate

counsel.

1. Appellant was denied the effective assistance of trial counsel pursuant to the Sixth and Fourteenth Amendment to the U.S. Constitution where counsel failed to object or challenge the validity of the no knock search warrant relating to evidence of serious risk of physical harm to law enforcement officers.

2. Appellant was denied the effective assistance of trial counsel pursuant to the Sixth and Fourteenth Amendment to the U.S. Constitution where counsel failed to file a motion to disclose the confidential informant. Had counsel filed this motion, appellant could have challenged the credibility of that individual and the information that individual provided to the police.

3. Appellant was denied the effective assistance of trial counsel where trial counsel failed to request *Franks* hearing in order to challenge the credibility of the confidential informants, and the detective where said information in the search warrant affidavit was false.

4. Appellant was denied the effective assistance of trial counsel where counsel failed to investigate the existence of probable cause to support the issuance of the warrant.

5. Appellant was denied the effective assistance of trial counsel where counsel failed to object to the court sentencing him to consecutive sentences that are otherwise allied offenses of similar import.

(*Id.* at 337-41.)  The State opposed the application.  (*Id.* at 352-61.)  On November 20, 2020, the

Sixth District Court of Appeals issues its decision on the Motion for Leave to File the

Application to Reopen.  While the court found Petitioner's application was timely, the court

denied that application after concluding on the merits that there was not a basis to reopen the

direct appeal.  (*Id.* at 363.)

### F.  Federal Habeas Corpus Petition

On March 26, 2021, Petitioner filed the pending petition for habeas relief.  In it, he

asserts the following grounds for relief:

**Ground One**: [M]y constitutional right to the effective assistance of counsel and due process by my counsel's failure to investigate the validity of the affidavit.

9

Supporting Facts: I informed my attorney that the controlled buys alleged by the police never occurred and that the affidavit to get the warrant was fraudulent based upon no controlled buys ever happening. The falsification of facts to obtain a warrant clearly violated my rights to due process of law in that my counsel's failure to investigate the validity of the warrant prevented me from asserting a defense based upon the police being at my home illegally. A Frank's Hearing was necessary for my defense.

**Ground Two**: I was illegally sentenced for five firearm specifications after it was established that I did not know how many officers were at my door.

Supporting Facts: When my door and window were breached, I fired my weapon under the belief that someone was trying to invade my home. I did not know that it was the police executing an illegal search warrant. Once I realized it was the police, I immediately put my gun down, raised my hands, and apologized to them for shooting. I did not know it was the police. I truly believed my home was being invaded. No evidence was produced that I knew it was the police entering my home. After I fired my weapon and was arrested, the police obtained a second search warrant to search my home which demonstrates that the first search warrant was illegal.

(Doc. No. 1 at 5, 7.)

On January 6, 2022, Respondent filed a Return of Writ, arguing that Ground One should be dismissed as procedurally defaulted, and Ground Two should be dismissed as either not cognizable on federal habeas review or as procedurally defaulted. (Doc. No. 9 at 46-56.) On January 7, 2022. Magistrate Judge Knapp ordered Respondent to file a supplemental brief addressing the merits of Petitioner's grounds for relief. (Doc. No. 10.) Respondent timely filed a Supplemental Return of Writ. (Doc. No. 11.)

On February 22, 2022, Petitioner filed his Traverse through counsel. (Doc. No. 12 at 1258-61.) Petitioner further argued that he may still obtain review of his claims on the merits despite any procedural default because he can establish "substantial reasons to excuse the default," and actual prejudice by the constitutional errors he highlights. (*Id.* at 1264.)

10

### G.  The R&R

With respect to Ground One, the R&R recommended dismissal because (1) Petitioner failed to comply with state procedural rule, (2) the state did, in fact, enforce the rule, and (3) the rule enforced (res judicata) is recognized by the state as a procedural bar.  (Doc. No. 13 at 1301-03.)  Challenges to the validity of the search warrant should have been raised on direct appeal. The R&R also stated the reasons why procedural default could not be excused, namely that Petitioner had not demonstrated or provided support for his assertions of cause, prejudice, or actual innocence.  (*Id.* at 1300 n.2, 1310-12.)

Similarly, the R&R recommended this Court find Ground Two to have been procedurally defaulted because Petitioner did not raise his purportedly illegal sentence in his direct appeal.  (*Id.* at 1314-17.)  Simply stated, Petitioner did not pursue this claim through the state's ordinary appellate procedures, and he did not meet his burden to excuse the default.

### H.  Petitioner's Objections to the R&R

Petitioner objected to the R&R on six grounds.  (Doc. No. 15.) The following is a summary of the objections, each of which the Court will address in further detail.

In his First Objection, Petitioner argues that his failure to raise particular aspects of the ineffective assistance of his trial counsel on direct appeal should be excused based on his appellate counsel's mistakes.  (*Id.* at 1324-25.)  Petitioner argues that his own efforts to rectify the appeal help establish the basis for excusing procedural default for failure to raise an issue on direct appeal.  (*See id.*)

In his Second Objection, Petitioner argues that his failure to raise the issue of the search warrant's validity on appeal was also the product of appellate counsel's errors.  (*Id.* at 1325.)

In his Third Objection, Petitioner makes two arguments regarding the R&R's observation that he did not perfect an appeal to the Ohio Supreme Court.  First, he contends that he provided

evidence of a Supreme Court appeal to the habeas counsel who submitted his Traverse, which he suggests was omitted.  (*Id.*)  Second, Petitioner attaches evidence that he contends shows that he did appeal to the Ohio Supreme Court.  (*See id.* and Exhibits B, C and D.)

In his Fourth Objection, Petitioner challenges the finding that he did not appeal to the Ohio Supreme Court from the appellate court's denial of Petitioner's Rule 26B application.  (*Id.* at 1326.)  *See* Ohio App. R. 26(B)(1) ("A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. ")

In his Fifth Objection, Petitioner challenges the Magistrate Judge's suggestion that he failed to provide legal authority in support of his position that if the search warrant was deemed invalid that this would state a valid defense to the felonious assault charges and conviction.  (Doc. No. 15 at 1326-27.)  He further contends that trial counsel rendered ineffective assistance with respect to the warrant and failure to raise a defense predicated on the Castle Doctrine.  (*Id.*)

In his Sixth Objection, Petitioner contends that, contrary to the R&R, he has produced evidence of his actual innocence.  (*Id.* at 1328.)  His position has two parts.  First, he claims not to have known that the people entering his home were law enforcement.  Second, he asserts that he was under no duty to retreat for a perceived home invasion.  (*See id.* at 1328-29.)

## II.  <u>Law and Analysis</u>

### A.  Standard of Review

"Federal habeas review of [a] state court's decision is governed by the standards established by the AEDPA."  *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000).  The AEDPA provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any

12

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.  "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record."  *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

To prevail under the AEDPA, Petitioner "must meet two requirements.  First, he must show that his incarceration violates the Constitution or federal law.  And second, [he] must prove that the [Ohio] Court of Appeals made an 'unreasonable' error of law or fact."  *James v. Corrigan*, 85 F.4th 392, 395 (6th Cir. 2023) (citations omitted).  "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice system.'"  *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011)).

A state court's decision is "contrary to" clearly established federal law only if the state court "applies a rule that contradicts the governing law" as determined by Supreme Court precedent or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court's precedent.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also White v. Woodall*, 572 U.S. 415, 419 (2014); *Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023), *cert. denied*,

13

No. 23-444, 2024 WL 674729 (U.S. Feb. 20, 2024).  A state court's decision is an "unreasonable application" of federal law only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Moss*, 62 F.4th 1011.

However, this Court does "not consider on habeas review a state court's determination of state law." *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008).  That is because "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The Court must conduct a *de novo* review of the portions of a report and recommendation to which objections are made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b)(3).  The Court may accept, reject, or modify, in whole or in part, a magistrate judge's findings and recommendations. *Id*.  Objections that simply restate arguments asserted in the briefs and addressed in the report and recommendation constitute general objections. *Middleton v. Octapharma Plasma, Inc.*, No. 19-1943, 2020 U.S. App. LEXIS 9585, *3 (6th Cir. Mar. 26, 2020).  General objections are "tantamount to no objection at all" and do not receive *de novo* review. *Id*.; *see also Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991) (recognizing that general objections duplicating the time and effort of the district court and magistrate judge waste judicial resources).  To receive *de novo* review of portions of a report and recommendation, the stated objection must "address specific concerns" with the report and recommendation in order to "focus attention on those issues . . . that are at the heart of the parties' dispute. *Howard*, 932 F.2d at 509 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).  "An objection preserves an issue when it explains and cites specific portions of the report which

counsel deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and alterations omitted).

### B. Ineffective Assistance of Counsel

Ground One of the Petition contends that Petitioner's trial counsel was ineffective. Specifically, trial counsel neither investigated or challenged the no-knock search warrant, which caused police to approach and enter Petitioner's home.  Further, appellate counsel failed to raise and preserve this issue in the direct appeal from the conviction and sentence.  (*See* Doc. 1 at 3, 5; Doc. No. 9-1 at 274-75 (state court post-conviction petition articulating federal constitutional claims).)

Petitioner claims that his trial attorney should have done more to capitalize on the State's decision to forego drug-related charges.  Petitioner surmises that he could have challenged the underlying search warrant.  (Doc. No. 1 at 7; Doc. 9-1 at 224-30, 234, 337-41, 288-90; Doc. No. 12 at 1265-68.)  He supposes that if police officers lacked probable cause and a valid warrant, then firing his gun could be justified or excused under the castle doctrine.  (*Id.*)

Petitioner was represented by separate counsel on appeal.  (Doc. 9-1 at 140, 271.) Ground One of the Petition accuses them both of ineffective assistance because they did not pursue this defense focused on the search warrant and the castle doctrine.  The First and Second Objections to the R&R focus on trial counsel's and appellate counsel's failure to preserve this defense.  (Doc. No. 15.)

The Sixth Amendment guarantees criminal defendants "the right . . . to have the Assistance of Counsel for [their] defence."  The right to counsel includes "'the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)).  Under *Strickland*, a defendant who claims ineffective assistance must prove (1) "that counsel's representation fell below an

15

objective standard of reasonableness," 466 U.S. at 687-88, and (2) that any such deficiency was "prejudicial to the defense," *id.,* at 692.

Review of an ineffective assistance claim that was resolved on the merits in state court is "doubly deferential" because it "gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 189 (emphasis in original; quotation omitted).

"[T]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* (quoting *Strickland*, 466 U.S. at 689). Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Cullen,* 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 688). To demonstrate prejudice, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In other words, he must show a "'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 563 U.S. at 189.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.

> To establish prejudice, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
>
> A reasonable probability is a probability sufficient to undermine confidence in the outcome.  To prevail on his ineffective-assistance claim, [Petitioner] must show, therefore, that there is a "reasonable probabilit" that he would have prevailed on his . . . defense had he pursued it.

*Knowles v. Mirzayance*, 556 U.S. 111, 127-28 (2009) (quoting *Strickland,* 466 U.S. at 694).

One way a habeas petitioner might overcome a failure to appeal or other procedural default in state court would be to show that ineffective counsel committed or caused the procedural error in state court.  But "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted[.]"  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

> [I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim.  * * * [P]rinciples of comity and federalism that underlie [the] longstanding exhaustion doctrine – then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c) – require *that* constitutional claim, like others, to be first raised in state court.  [A] claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.

*Id.* at 451-52 (2000) (emphasis in original; quotations omitted).

### 1.     The R&R

For reasons set forth in Section III.C. of the R&R, the Magistrate Judge recommended that Ground One was procedurally defaulted.  (Doc No. 13 at 1300-02.)  The Magistrate Judge reasoned that Petitioner's failure to raise the legal claims in Ground One as part of the direct appeal from the conviction and sentence means that now any reliance on Ground One is

foreclosed by the Ohio law doctrine of *res judicata*.  (*See id.*)  The state trial court reached the same conclusion when denying Petitioner's state law postconviction petition  (Doc. No. 9-1 at 243-45.)

In his First Objection, Petitioner asserts that the R&R erred by finding that he failed to raise Ground One in his direct appeal.  (Doc. No. 15.)  In support of his argument, Petitioner asserts that he sought to have the Ground One issues "raised in his direct appeal, but his [appellate] attorney did not see fit for the issue to be raised."  (*Id.* at 1324.)  Petitioner attaches a letter to his attorney, Lawrence Gold, listing "several issues that should have been raised at [his] trial by my trial attorney that were not."  (Doc. No. 15-1 at 1331.)  These issues include "the drug search warrant," "witnesses," the trial court's mention of drugs in the presence of the jury, and allied offenses. (*Id.*)  Petitioner argues that though courts "have held defendants accountable and liable for their attorney's missteps," his efforts to raise these issues on direct appeal "provides cause to excuse the procedural default."  (Doc. No. 15 at 1324-25.)  In short, Petitioner faults his appellate counsel for not raising in the direct appeal the ineffective assistance of trial counsel or the defenses regarding the search warrant and castle doctrine.

Keeping with the order of the objections to the R&R, the Court begins with appellate counsel's performance.  The Court then considers prejudice, examining both trial and appellate counsel.

### 2.    Deficient Performance – Appellate Counsel

Appellate counsel must provide reasonable professional judgment in presenting an appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985).  Allegations that appellate counsel provided constitutionally deficient assistance are evaluated using the *Strickland* test.  *Burger v. Kemp,* 483 U.S. 776, 781-82 (1987).  In *Burger*, the Supreme Court echoed *Strickland*, which cautioned against allowing hindsight to distort, professional judgments made by counsel.

18

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 789 (quotations and citations omitted). Thus, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)).[4]

Petitioner's sole evidence on this topic is the above-referenced letter he sent to attorney Lawrence Gold on May 6, 2019. (Doc. No. 15-1 at 1331.) That date is significant. Around two months prior, on March 11, 2019, appellate counsel Lawrence Gold filed an appellant's brief on Petitioner's behalf in the direct appeal. Petitioner never suggested that he did not receive a copy of the appellate brief once it had been filed on his behalf. Rather, his letter suggests the opposite. The letter engages in issue-spotting of additional possible grounds for appeal.

Notably, the letter does not indicate the legal basis or the strength of any argument that might be made from issues he listed. The issues were merely mentioned in a few words. The May 6, 2019 letter also does not show that a disagreement occurred between Petitioner and appointed appellate counsel during the latter's engagement. Petitioner never alleged that sort of

---

[4] Prejudice from appellate counsel's ineffective assistance can be "presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Garza v. Idaho*, 586 U.S. --, 139 S. Ct. 738, 744 (2019) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)); *see also Webb v. Streeval*, No. 18-5988, 2019 WL 4554530, at *2 (6th Cir. June 11, 2019). For example, the Sixth Circuit "presume[s] prejudice in an ineffective-assistance claim if a defendant can establish a reasonable probability that, but for counsel's deficient performance, he would have appealed." *Haji-Mohamed v. United States*, No. 21-5733, 2024 WL 776116, at *7 (6th Cir. Feb. 26, 2024).

19

conflict.  In sum, Petitioner's letter does not demonstrate that he asked counsel to appeal on particular grounds yet was ignored.  Rather, Petitioner communicated additional arguments after appellate counsel had already framed the issues on appeal.

In any event, the May 6, 2019 letter did not instruct appellate counsel to alert the Court of Appeals that some significant omission had occurred.  The letter did not instruct appellate counsel to seek leave to withdraw the previously filed brief to allow Petitioner *pro se* or some other attorney to file a substitute brief.  To the contrary, Petitioner asserted that he *himself* would prepare "a supplemental brief" on such issues.  (*See* Doc. No. 15-1.)[5]

In his Traverse, Petitioner reviews the events that occurred in 2019.  There is no mention of any unreasonable conduct by appellate counsel in that period with respect to the issues underlying Ground One.  (*See* Doc. No. 12 at 1253.)[6]  There is no assertion in the Traverse that appellate counsel failed to answer the question posed to him.  (*See id.*)  Moreover, Petitioner reviewed the events of 2019 in his state court Motion for Leave to File Delayed Appellate Rule 26(B) Application, which he filed on August 7, 2020.  (*See* Doc. No. 9-1 at 333.)  There is no indication that appellate counsel ignored Petitioner's May 6, 2019 letter or refused Petitioner's efforts to discuss some particular appellate issue or assignment of error.  Relatedly, there is no indication that Petitioner complained to appellate counsel or asked him to revise his appellant brief.

_____

[5] Petitioner did raise a procedural question at the end of his letter.  (Doc. 15-1 at 1331.)  Notably, Petitioner does not contend in his subsequent state court filings or in his federal habeas filings that appellate counsel refused to answer his letter.

[6] By contrast, Petitioner's Traverse does raise such arguments regarding firearm designations and consecutive sentencing.  (*Cf.* Doc. No. 12 at 1258.)

At most, the letter suggests that appellate counsel exercised his own judgment in crafting the issues in the appellant's brief on direct appeal.  (*See* Doc. No. 15-1 at 1331.)  In so doing, counsel omitted or winnowed out an assignment of error related to the search warrant.  Petitioner has not shown by evidence or legal argument why that performance was constitutionally deficient.  *See generally Strickland*, 466 U.S. at 689-90 ("Even the best criminal defense attorneys would not defend a particular client in the same way.").  Plaintiff has not shown that his counsel misunderstood the relevant law.  *Cf. Dando v. Yukins*, 461 F.3d 791, 800 (6th Cir. 2006).  Nor has Plaintiff made a showing that trial counsel's or appellate counsel's decision to forego the warrant/castle defense was anything other than "strategic choices" or "reasonable professional judgments."  *Strickland*, 466 U.S. at 690-91; *see also Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003).  Petitioner has not shown that to be constitutionally ineffective performance under *Strickland*.

Still, the Court is mindful that "not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic."  *Cowans v. Bagley*, 624 F. Supp. 2d 709, 832 (S.D. Ohio 2008), *aff'd*, 639 F.3d 241 (6th Cir. 2011).  The Sixth Circuit instructs that "the following considerations . . . ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently."  *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999).

1. Were the omitted issues "significant and obvious"?

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

21

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* On balance, these considerations do not lead to the conclusion that appellate counsel's failed to perform competently.

### 3.    Prejudice – Trial Counsel and Appellate Counsel

The Sixth Circuit instructs that an ineffectiveness claim can be disposed of solely on the ground of lack of sufficient prejudice. *Dekeyzer v. Harry*, 603 F. App'x 399, 404 (6th Cir. 2015); *Moss v. Miniard*, 62 F.4th 1002, 1014 (6th Cir. 2023), *cert. denied*, No. 23-444, 2024 WL 674729 (U.S. Feb. 20, 2024).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." To prevail on his ineffective-assistance claim, [Petitioner] must show, therefore, that there is a "reasonable probability" that he would have prevailed on his [search warrant challenge and related] defense had he pursued it.

*Knowles v. Mirzayance*, 556 U.S. 111, 127-28 (2009) (quoting *Strickland,* 466 U.S. at 694).

Prior to Petitioner's criminal trial, the State moved *in limine* to exclude evidence related to illegal narcotics.  (Doc. No. 9-1 at 107-15.)  The State instead gave notice that it would rely on

evidence that, prior to the executing the search warrant, officers were informed that Petitioner had a handgun in the residence to be searched.  (*Id.* at 99-105.)  To the State, this evidence would provide context to the jury for why the no-knock search was performed.  (*See id.*)

On June 11, 2018, the state trial court held that "[t]he nature of the search warrant or any evidence obtained pursuant to the search warrant is not relevant as it related to this case [*i.e.*, charging felonious assault].  The only evidence that is allowed during the course of the trial will be the fact [that] there was a search warrant being executed at that location."  (Doc. No. 9-1 at 126-27.)

In light of the trial court's ruling, trial counsel's failure to challenge the validity of the search warrant itself caused no prejudice.  The trial court limited the introduction of evidence about what police were searching for and what, if anything, they found.  Challenges to the search warrant would not have changed the outcome of the felonious assault trial.

Moreover, opening the door to testimony regarding events leading up to the night of the search warrant may have opened the door to the State's evidence regarding drug dealing.  Once the trial court ordered that drug dealing evidence was irrelevant to the felonious assault charges, trial counsel reasonably left well enough alone.

In any event, the Ohio Court of Appeals on direct review from the trial and conviction found that police officers announced "police – search warrant" outside Petitioner's door *before* he began shooting.  Petitioner does not contend otherwise – nor does he show otherwise by clear and convincing evidence.  With that fact established, trial counsel reasonably could decide not to pursue challenges to the search warrant affidavit.

The Ohio Court of Appeals did not unreasonably apply federal law when it held that Petitioner had not shown prejudice related to the issues in Ground One of the Petition.

23

> Appellant's first, second, third, and fourth proposed assignments of error each relate to his trial counsel's failure to challenge the validity of the search warrant executed on his residence. It is undisputed that appellant's trial counsel did not challenge the probable cause underlying the search warrant. Appellant's trial counsel also did not challenge the affidavit underlying the search warrant as failing to comply with the statutory requirements necessary to obtain a waiver of the knock and announce.

(Doc. No. 9-1 at 368-69.) The appellate court concluded that Petitioner "failed to explain how even a successful challenge of the underlying search warrant had a prejudicial effect on his trial." (*Id.* at 369.)

This topic also was addressed when the Court of Appeals denied the Rule 26(B) Application.

> [A]ppellant's application fails to explain how he suffered any prejudice by his trial counsel's failure to challenge the search warrant. Appellant's convictions were not based on the evidence he now claims should have been excluded. As a result, appellant's application fails to demonstrate that there was a reasonable probability of success had his appellate counsel assigned trial counsel's purported ineffective assistance as error in his direct appeal.

(*Id.* at 370-71.) In short, the Ohio courts did not misapply *Strickland*.

For these reasons, the Court Plaintiff has not shown prejudice resulting from trial counsel's failure to challenge the search warrant. Nor has Plaintiff shown prejudice resulting from appellate counsel's failure to raise the purported ineffective assistance of trial counsel for failing to challenge the search warrant.

### 4. *Res Judicata* and Procedural Default

"A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a 'fundamental miscarriage of justice' if the claim is not considered." *Obermiller v. Shoop*, No. 1:19 CV 2193, 2024 WL 404490, at *5 (N.D. Ohio Feb. 2, 2024) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To establish cause, a petitioner must point some

24

"something external" that "cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753.

In certain circumstances, ineffective assistance of counsel may serve as cause to overcome procedural default. However, mere "ignorance or inadvertence" does not constitute such a circumstance because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *See id.* at 753-54 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

The Ohio Supreme Court recently reviewed the intersection between *res judicata* and claims of ineffective assistance. *See State v. Blanton*, 215 N.E.3d 467, 472 (Ohio 2022). An Ohio court reviewing a postconviction-relief petition generally may not decide a claim that could have been presented at trial and raised on direct appeal. But "[t]here's a twist when it comes to claims of ineffective assistance of counsel." *Id.*

> [R]es judicata does not bar a postconviction ineffective-assistance-of-counsel claim when either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief. The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred.

*Id.* These points of law were established in 2018 when Petitioner was convicted and in 2019 when his direct appeal was briefed. *See generally State v. Perry,* 226 N.E.2d 104 (Ohio 1967); *State v. Cole*, 443 N.E.2d 169 (Ohio 1982).

There is no dispute here that Petitioner had a different attorney on direct appeal than he had as trial counsel. (*Compare* Doc. No. 9-1 at 73 *with id.* at 140.) Petitioner does not supply any argument or legal authority to disprove that the Ohio courts' decision to enforce *res judicata* against Petitioner was an adequate, independent state law ground for the decisions to deny Petitioner's post-conviction petition, to deny Petitioner's Rule 26(B) Application, and to overrule assignments of error he raised in the Court of Appeals.

25

### 5.      First Objection

As discussed above, Petitioner has not satisfied *Strickland*.  And, as discussed later, he has not shown that the defenses in question had a reasonable probability of success.

For the reasons above, Petitioner's First Objection is overruled.

### 6.      Second Objection

The Second Objection is expressly predicated on the same basis and reasoning as the First Objection but with one additional legal argument.  (*See* Doc. No. 15 at 1325.)  Petitioner directs the Court to the second prong under *Maupin*.  (*Id.*)  Petitioner's meaning is not entirely clear.  As best the Court can tell, the Second Objection is raised in tandem with the First as follows.  With the First Objection, Petitioner cites trial counsel's ineffective assistance in failing to challenge the search warrant.   He relies on appellate counsel's ineffective assistance in the direct appeal to show cause and prejudice to escape procedural default for the ineffective trial counsel claim.  In the Second Objection, Petitioner points to ineffective assistance of appellate counsel including with respect to the appeal taken from the denial of his state court post-conviction petition.

Regarding the precedent cited in the Second Objection, the Sixth Circuit held:

> When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis.  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .  Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . .  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .  Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (citations omitted).

Petitioner seems to argue that even though the R&R points out where the state courts *did* rely on *res judicata* and procedural default, his appellate counsel's ineffective assistance ought to excuse any procedural bar. Petitioner has not identified any error in the Magistrate Judge's analysis of *Maupin*'s second prong. (*See* Doc. 13 at 1301.) The basis for a challenge to trial counsel's performance in failing to challenge the search warrant was within the trial record. Once represented by a new attorney on direct appeal, it was incumbent on Petitioner with appellate counsel to raise the search warrant issues or lose them. The Magistrate Judge correctly concluded that the Ohio courts enforced the *res judicata* doctrine against Petitioner. Moreover the Court agrees with the R&R's conclusion that Petitioner did not preserve his ineffective appellate counsel claims because Petitioner failed to comply with Ohio procedural rules for seeking Ohio Supreme Court review. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

For the reasons above, Petitioner's Second Objection is overruled.

### C. Ohio Supreme Court Review

The Third and Fourth Objections address different issues and different aspects of the rules regarding procedural default. These objections do not relate to counsel's performance. Instead, they relate to Petitioner's *own* failure to seek review in the Ohio Supreme Court from the Court of Appeals' three decisions in three appeals brought by Petitioner.

The Sixth Circuit has addressed the requirement that a convicted defendant perfect an appeal not only in the Court of Appeals but also in the Ohio Supreme Court. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *Board v. Bradshaw*, 805 F.3d 769, 775-76 (6th Cir. 2015) (noting that *Bonilla* "held that denial of a motion for delayed appeal could constitute a procedural bar that would preclude federal review of the petitioner's claims").

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray,* 477 U.S. at 488; *see also Shorter v. Ohio Dep't of Rehab. & Corr.,* 180 F.3d 723, 726 (6th Cir. 1999) (noting that petitioner had failed to demonstrate cause because his "[c]ounsel's efforts to comply with the State's procedural rule were not impeded by some objective factor external to the defense"). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.' " *Hargrave-Thomas v. Yukins,* 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McCleskey v. Zant,* 499 U.S. 467, 493-94 (1991)).

If a petitioner offers no permissible excuse for failing to timely appeal to the Ohio Supreme Court, then "he has not established cause, thereby freeing [the Court] of the duty to evaluate whether he has shown prejudice." *Cvijetinovic v. Eberlin*, 617 F.3d 833, 840 (6th Cir. 2010). Petitioner's Third and Fourth Objections argue that there is cause to excuse the procedural defaults for failure to bring timely appeals to the Ohio Supreme Court.

### 1.    Direct Appeal from the Conviction

Before reaching Petitioner's objection regarding his efforts to secure review in the Ohio Supreme Court, the Court notes a key point on which Petitioner does not object.

On March 31, 2020, the Ohio Court of Appeals issued a decision in the direct appeal from the conviction and sentence. (Doc. No. 13 at 1291.) Petitioner did not appeal to the Ohio Supreme Court. (*Id.*) He does not contest that fact or the R&R's reliance on it. (*See* Doc. No. 15.)

Accordingly, with respect to any claims of ineffective assistance by trial counsel, those have been doubly defaulted on procedural grounds. First, Plaintiff failed to include trial counsel's performance and failure to challenge the search warrant as grounds in his appeal to the Court of Appeals. And as for those grounds which Petitioner *did* include in the direct appeal

which resulted in the March 31, 2020 decision from the appellate court, Petitioner procedurally defaulted those by failing to seek Supreme Court review.

### 2.     Third Objection

Petitioner argues that the R&R erred by stating that Petitioner failed to provide evidence of his effort to appeal to the Ohio Supreme Court in its procedural default analysis.  (Doc. No. 15 at 1325.)  In support of this objection, Petitioner submits a postal receipt, which he says "clearly shows his appeal to the Supreme Court of Ohio was timely mailed" on December 28, 2020. (Doc. No. 15-1 at 1332.)  This was an appeal from appellate court's denial of Petitioner's motion to reopen the direct appeal.  (*See* Doc. No. 15-2.)

Petitioner contends that he sent this evidence to his attorney to submit with his Traverse but "[o]bviously, such evidentiary documentation was not presented."  (Doc. No. 15 at 1325.) Petitioner further cites cases that he argues stand for the proposition that "when a prisoner submits a [court pleading] to the prison mailroom five days prior to filing deadline and it is not delivered in a timely manner, there is cause to excuse [the] procedural default."  (*Id.*)

"Ohio does not have a prison-mailbox rule similar to that of the federal government," so a petition or motion seeking Supreme Court review are *not* deemed to be filed upon day the inmate presents them to the prison for mailing.  *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (citing *State ex rel. Tyler v. Alexander*, 555 N.E.2d 966, 967 (Ohio 1990)).

For the reasons above, the Third Objection is overruled.

### 3.     Fourth Objection

Petitioner contends that the R&R erred in stating that he "failed to appeal the denial of his App. R. 26(B) application to reopen to the Supreme Court of Ohio."  (*Id.* at 1326.)  Petitioner attached several documents that he claims show that he "exhibited due diligence in having his issues heard by the Supreme Court of Ohio [ ] but through no fault of his own, such appeal did

29

not timely arrive." (*Id.*; *see also* Doc. No. 15-2 (containing correspondence from the Ohio

Supreme Court and Petitioner's rejected memorandum in support of jurisdiction).)

Petitioner has attached two documents to his objections: a letter from the Ohio Supreme

Court and a mail receipt that he claims show that he was diligent in pursuing his appeals.  (*See*

Doc. No. 15-1 at 1332; *see also* Doc. No. 15-2.)  Petitioner's correspondence with the Ohio

Supreme Court simply confirms that his brief on jurisdiction was not filed *because* it was

received after the deadline for appealing the Court of Appeals' November 20, 2020 opinion.

(*See* Doc. No. 15-2.)  The receipt demonstrates that Petitioner sent a piece of mail on December

28, 2020, but it does not provide any further information regarding what this piece of mail

contained.  (*See* Doc. No. 15-1 at 1331.)

Moreover, these documents have no bearing on Petitioner's failure to appeal the Court of

Appeals' March 2020 and July 2020 decisions.  Petitioner offers no explanation for his failure to

perfect appeals to the Ohio Supreme Court.  Accordingly, Petitioner has not established that

there is cause to excuse his procedural default, so the Third Objection is overruled.

The Fourth Objection is overruled.

### D.  Felonious Assault and the Castle Doctrine

Petitioner's final two objections address the elements of, and defenses to, a charge of

felonious assault under Ohio law.

### 1.  Fifth Objection

In his Fifth Objection, Petitioner relies on a 2020 decision of the Ohio Court of Appeals

which analyzed the self-defense and castle doctrines.  *See State v. Claren*, 152 N.E.3d 449, 453

(Ohio Ct. App. 2020).

*Claren* was not cited in the Traverse.  (*See* Doc. No. 12.)  Citing that case *after* the

issuance of the R&R really does not answer or overcome the Magistrate Judge's point about

Petitioner's failure to cite caselaw to substantiate his positions about potential legal defenses. (*See* Doc. No. 13 at 1309-10.)  Further, this Court has reviewed the Traverse, and there is no discussion of the law regarding self-defense or the castle doctrine.  (*See* Doc. No. 12.)

*Claren* does not suggest a likelihood that Petitioner's proposed defenses would have succeeded.   That case did not involve procedural default, as here.

> The record reflects that Claren requested an instruction on the castle doctrine in his proposed jury instructions with a memorandum in support of the instruction, argued for the inclusion of the instruction at the start of trial, participated in an off-the-record side bar discussion about the instruction at the conclusion of trial, and renewed his request for the instruction when the court finished instructing the jury. Meanwhile, the State opposed the instruction and provided the court with case law in support of its argument. Though Claren was unsuccessful in obtaining the instruction, the record affirmatively shows that the trial court was apprised of both his and the State's positions on the issue and the governing law.

152 N.E.2d at 458.

Petitioner neither objected nor submitted legal arguments to the trial court in support of the defense he now describes.  Petitioner instead presented and briefed in the trial court a different defense – i.e., whether he mistakenly believed the people outside his door were robbers, not police officers.  Petitioner sought an instruction that would recognize mistake of fact as a defense to the felonious assault charges.

As to the merits of the defenses Petitioner says were lost by ineffective counsel, *Claren* casts doubt on Petitioner's legal theories and claim of ineffective assistance.

> [I]t appears that the [trial] court may have conflated the castle doctrine with the statutory presumption of self-defense that may arise in certain instances. *See* Former R.C. 2901.05(B)(1) (rebuttable presumption of self-defense arises if defendant used deadly force against a person who entered his residence unlawfully and without privilege to do so).  A victim's legal status (i.e., whether he was lawfully present) is only relevant to the statutory presumption of self-defense.  The castle doctrine applies, regardless of the victim's legal status, if the defendant was lawfully occupying the residence at the time he used the deadly force.

*Id.* at 458-59 (quotation and citation omitted).

*Claren* indicates that the question of whether police did or did not have a valid warrant is not determinative for a castle doctrine defense (as opposed to self-defense). Petitioner's primary accusation of fault with his trial counsel was that he did not challenge the validity of the search warrant. Petitioner argued to the state courts and to this Court that his inability to show that the warrant was defective undermined or precluded his castle doctrine defense. But *Claren* teaches that the focus of a castle doctrine defense is on the resident who shoots – not the legal status of the entering party who is shot. In any case, this Court does "not consider on habeas review a state court's determination of state law." *Railey*, 540 F.3d at 398.

For these reasons, the Fifth Objection is overruled.

### 2. Sixth Objection

In his Sixth Objection, Petitioner contends that, contrary to the R&R, he has produced evidence of his actual innocence. (Doc. No. 15 at 1328.) His position has two parts. First, he claims not to have known that the people entering his home were law enforcement. Second, he asserts that he was under no duty to retreat from a perceived home invasion. (*See id.* at 1328-29.)

The Supreme Court recognizes a "rare" exception for an "extraordinary case" whereby a procedurally barred claim might nonetheless be considered on habeas review to save "those who were truly deserving" from a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). A substantial claim of actual innocence is a prerequisite for seeking such extraordinary relief. *See id.*

To establish actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). "To be credible, such a claim requires petitioner to

support his allegations of constitutional error with new reliable evidence – whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

that was not presented at trial." *Id.* (quoting *Schlup*, 513 U.S. at 324).  It "is important to note in

this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

That does not mean that an actual innocence basis for habeas relief could never be based

on a point of law rather than a particular fact or piece of evidence.  *See generally Obi v. United

States*, 797 F. App'x 926, 929-32 (6th Cir. 2019).  For example, "*Bousley* established an

analytical framework for addressing actual innocence claims based upon a claim of legal

innocence occasioned by an intervening change in law."  *Phillips v. United States*, 734 F.3d 573,

581 (6th Cir. 2013).  But the Sixth Circuit in *Phillips* held that a change of law must *already*

have occurred in controlling precedent.  The manifest injustice exception "cannot be so broadly

defined as to be premised upon changes in [legal] interpretation that may be appealing in

argument, but are certainly not binding."  *Id.* at 585.

Here, Petitioner does not point to evidence outside the trial.  Instead, he refocuses

attention on his own trial testimony, *i.e.*, that he did not know who was outside his door, or that it

could be a police officer (which resulted in a higher felony classification and longer sentence), or

that it could be *multiple* police officers (which resulted in convictions on multiple attempt

counts).  *See Hill*, 2020 WL 1528014, at *2 (discussing Petitioner's testimony.)  This is not

newly discovered evidence.  It is not even unheard evidence.  The testimony regarding

Petitioner's knowledge and *mens rea* was presented to and rejected by the jury.[7]

---

[7] Petitioner does not object to the R&R's analysis of the alleged new evidence contained in an
affidavit by Glenn Kowalski regarding the legality of a warrant in a separate criminal matter.

Without new evidence, the Sixth Objection asserts Petitioner's innocence based solely on legal and conceptual grounds.  On that front, Petitioner appears to urge a new or more refined approach to felonious assault charges and sentencing.

Petitioner never clearly identifies what *federal constitutional* legal theory he has that would render him innocent of felonious assault.  He also cites no binding authority to show any crucial change in the law that affects his guilt or innocence.  Petitioner shows no change in federal constitutional law, federal habeas doctrine, or the applicable Ohio criminal statutes.  This Court does "not consider on habeas review a state court's determination of state law." *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008).  The Supreme Court of Ohio is the "final arbiter on matters of state law." *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008).

This Court does not have authority to instruct the Ohio Supreme Court to adopt a prisoner mailbox rule that would salvage Petitioner's claims.  Petitioner did not avail himself of opportunities to frame his arguments in the Ohio Supreme Court, and his failures to do so do not rise to the level of an extraordinary case that might excuse a procedural default.  Three times Petitioner could have timely sought review in the Ohio Supreme Court.  Twice Petitioner declined to seek review at all.  On a third occasion he missed the deadline.

Although the Ohio Supreme Court did not opine on Petitioner's case, the Ohio Court of Appeals did.  A "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v.*

---

(*See* Doc. No. 13 at 1311-12.)  Accordingly, the Court will not conduct a *de novo* review of that section of the R&R.

*Richey*, 546 U.S. 74, 76 (2005).  The Ohio appellate court rejected Petitioner's arguments that he had a defense to felonious assault charges.

For these reasons, the Sixth Objection is overruled.[8]

### E.  Evidentiary Hearing

Petitioner has requested an evidentiary hearing.  For the reasons stated above, an evidentiary hearing is not warranted.  *See* 28 U.S.C. § 2254; *see also Schiro,* 550 U.S. 465; *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

### III.    Conclusion

For the reasons stated herein, Petitioner's objections are OVERRULED.  The R&R is ACCEPTED.  The Petition for Writ of Habeas Corpus is hereby DENIED, and this matter is DISMISSED.  The Court certifies that there is no basis on which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).


**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: March 26, 2024

---

[8] Petitioner does not object to the R&R's analysis of the allegedly new evidence contained in an affidavit by Glenn Kowalski regarding the legality of a warrant in a separate criminal matter. (*See* Doc. No. 13 at 1311-12.)  Accordingly, the Court will conduct a *de novo* review of this section of the R&R.